UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

O'KEEFE & ASSOCIATES, INC.          :

    Plaintiff                                        :

VS.                                                       :     CIVIL ACTION NO.
                                                                3:00CV00678 (SRU)
THEME CO-OP PROMOTIONS, INC.   :

    Defendant                                    :     APRIL 30, 2004

## PLAINTIFF'S SECOND AMENDED COMPLAINT

**1.   PRELIMINARY STATEMENT:**

    1.   This action seeks compensatory and punitive damages, as well interest, attorneys' fees and costs resulting from Defendant's tortuous breach of contract and other statutory and common law causes of action including breach of express and implied contract, breach of the implied covenant of good faith and fair dealing; unjust enrichment; promissory estoppel; negligent misrepresentation; fraudulent misrepresentation; Connecticut Unfair Trade Practices Act ("CUTPA"); and quantum meruit.

**II.   JURISDICTION:**

    2.   This action arises under the common laws of the State of Connecticut.

    3.   Jurisdiction of the Court is based on the diversity of citizenship of the parties.

4.  Compensatory damages, punitive damages, interest, costs and attorneys' fees are available under the common and statutory law of the State of Connecticut.

### III. VENUE:

5.  This action properly lies in the District of Connecticut because the claim arose in the District of Connecticut. The parties entered into contracts within the state of Connecticut; and Defendant's actions have caused injury to Plaintiff in the state of Connecticut. Defendant performed activities required by the agreement between the parties within the state of Connecticut in fulfillment of the mutual promises and purposes of the agreement. Plaintiff's obligations under the agreement were performed within the state. Connecticut General Statutes Section 33-411(c).

### IV. PARTIES:

6.  The Plaintiff, John O'Keefe & Associates, Inc. ("O'Keefe"), was and is a Connecticut corporation with its principal place of business in Southport, Connecticut.

7.  The Defendant, Theme Co-Op Promotions, Inc. ("TCP"), was and is a California corporation with a principal place of business in San Francisco, California. At the time of entering the agreement with O'Keefe, TCP had an office and did business in Fairfield County, Connecticut. Upon information and belief, TCP continues to solicit business in Connecticut.

## V.     FACTUAL ALLEGATIONS:

8.     O'Keefe is, and at all times material herein is, a highly regarded national executive search firm specializing primarily in the recruitment of executives in the fields of sales, marketing and management.

9.     TCP is a California corporation who at the time the agreements involved in this action were entered into had an office in Connecticut. TCP solicited business and continues to solicit business in Connecticut.

10.     Gerry Gersovitz is, and at all relevant times was, TCP's founder, owner and President, and an agent and employee of TCP.

11.     Mr. Walter E. "Chip" Cohan ("Cohan") is, and was at all material times, TCP's Vice President, National Sales Manager and an agent and employee of TCP.

12.     Mr. Chuck Sjoberg ("Sjoberg") is, and was at all material times, TCP's Vice President, Field Communications, and an agent and employee of TCP.

13.     Following a meeting held at Longshore in Westport, Connecticut, in which the relationship between the parties was discussed, and subsequent negotiations, discussions, and revisions, the parties entered into a series of agreements.

14.     On July 29, 1998, Cohan, in his capacity as Vice President of TCP, entered into a written contract with O'Keefe whereby O'Keefe would search for three National Account Managers. In addition, on November 13, 1998, Cohan contracted for an additional National Account Manager-Midwest. The understanding between the

parties was reached in Connecticut after a thorough discussion of the function and duties of the jobs being filled.

15. On October 9, 1998, Sjoberg, in his capacity as Vice President of TCP, entered into a written contract with O'Keefe whereby O'Keefe would search for two Field Communications Managers.

16. On January 4, 1999, Gersovitz in his capacity as President and CEO of TCP, entered into a written contract with O'Keefe whereby O'Keefe would search for a Director-Business Development. In addition, there was an agreement that O'Keefe would also search for a Marketing Manager. TCP reviewed the written agreement prepared by O'Keefe for the Marketing Manager position and agreed to its terms, as evidenced by its payment of the first invoice called for in the agreement.

17. The above referenced contracts call for O'Keefe to:

   a. develop a position specification describing the basic duties and responsibilities of the position;

   b. search the field to locate executives with qualifications closely matching the specifications;

   c. interview the most qualified candidates to obtain a comprehensive understanding of their credentials, accomplishments and potential; and

   d. present the most qualified candidates to TCP for evaluation.

18. The July 29, 1998 and November 13, 1998 contracts between TCP and O'Keefe required TCP to pay a minimum fixed fee of thirty thousand dollars ($30,000)

per position, plus any out-of-pocket expenses. In addition, if any of the National Account Managers were promoted to a Vice President position within a year of being hired, O'Keefe would realize an additional $20,000 in fees per individual.

19. The October 9, 1998 contract between TCP and O'Keefe required TCP to pay a minimum fixed fee of twenty-five thousand dollars ($25,000) per position, plus any out-of-pocket expenses.

20. The January 4, 1999 contract between TCP and O'Keefe required TCP to pay a minimum fixed fee of sixty thousand dollars ($60,000) for the Director, Business Development position plus a minimum fixed fee of thirty thousand dollars ($30,000) for the Marketing Manager position, plus any out-of-pocket expenses.

21. Each of the above referenced contracts required TCP to pay fifty percent (50%) of the fixed fees to O'Keefe upon the signing of the contract, and fifty percent (50%) upon the completion of the search.

22. Each of the above referenced contracts also stated that "In the event that an executive is hired in connection with work performed by O'Keefe and Associates, for a position different from the position described above, a full professional fee based upon the first year's estimated cash compensation will be due for that executive(s)".

23. O'Keefe developed the position specifications describing the duties and responsibilities of the positions and searched the field to locate executives with qualifications closely matching said specifications.

24. In its search, O'Keefe interviewed the most qualified candidates to obtain a comprehensive understanding of their credentials, accomplishments and potential; and presented qualified candidates to TCP for evaluation. TCP interviewed many of these candidates, several in Connecticut, including the office of O'Keefe.

25. TCP hired ten candidates obtained through O'Keefe's efforts, Rob Cooke, Steve Regan, John Sandwick, Cary Rogers, Lorri Rice, Rick Banez, Crystal Hudson, Todd Nonken, Siena Long and Kevin Mulrain. However, despite due demand, TCP has not paid O'Keefe the full amount of the earned fees.

26. The total professional fees due O'Keefe for placing the ten candidates, per the parties' agreements, was a minimum of three hundred thirty five thousand dollars ($335,000), plus expenses.

27. To date, O'Keefe has received payment of two hundred twenty thousand dollars ($220,000) towards the professional fees due, leaving a balance currently due and owing of at lest one hundred fifteen thousand dollars ($115,000).

28. In addition, the positions ultimately accepted by Todd Nonken and Siena Long evolved over the course of the search, in terms of job title responsibilities and first year compensation. Plaintiff is, therefore, entitled to additional fees of twenty thousand dollars ($20,000) for Nonken and fifteen thousand ($15,000) for Long. As such, the total amount owed to O'Keefe, pursuant to the parties' agreements, is one hundred fifty thousand dollars ($150,000).

29. In accordance with the terms of the contracts, O'Keefe invoiced TCP for services rendered in connection with the hiring of the candidates.

30. Despite repeated requests for payment, TCP has refused to pay O'Keefe the balance due for services rendered in connection with the hiring of five of the candidates placed with TCP.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

31. TCP's failure to pay O'Keefe fully for the services rendered as agreed upon in connection with the hiring of the candidates constitutes a breach of contract entitling the Plaintiff to damages.

## SECOND CAUSE OF ACTION: BREACH OF IMPLIED CONTRACT

32. The plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 31 into this the Second Cause of Action.

33. By its instructions to O'Keefe to seek out and present qualified candidates meeting its changing specifications, and through its words, actions and conduct, TCP implied that it would compensate O'Keefe for those positions as set forth in their contract.

34. Defendant's instructions to O'Keefe to keep an eye out for available talent to refer such individuals to Defendant constituted an implied contract that O'Keefe would be compensated for such referrals in accordance with the parties' previous agreements, practices and customs.

35. Defendant's refusal to pay O'Keefe fully for services rendered in the hiring of the candidates constitutes a breach of an implied contract entitling the Plaintiff to damages.

## THIRD CAUSE OF ACTION: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

36. The Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 35 into this the Third Cause of Action.

37. TCP willfully and knowingly refused to pay O'Keefe for services rendered and due and owing under the parties' agreement.

38. TCP knowingly asserted false and unsupported objections and excuses in order to avoid paying O'Keefe what was rightfully due under the parties' agreements.

39. TCP falsely claimed that the candidates in question were not qualified for the positions they held, despite knowing these assertions were false.

40. TCP falsely asserted that Lorri Rice was never interviewed or otherwise evaluated by O'Keefe and maintained that assertion despite being presented evidence to the contrary.

41. TCP falsely asserted that the parties had agreed to a guarantee that some fees would be returned to TCP if Siena Long was employed for less that a year despite the fact that the parties had negotiated and agreed upon explicit contractual language to the contrary.

42.    TCP falsely asserted that it was due back fees for other individuals employed less than a year, despite the fact that the parties had negotiated and expressly included language to the contrary in its agreements.

43.    TCP had and has a practice of seeking to avoid meeting its contractual obligations to other recruiters and contractors in addition to O'Keefe.

44.    By its continued refusal to pay O'Keefe for services rendered in connection with the employment of the candidates in question, TCP has breached the implied covenant of good faith and fair dealing which by law was a part of the parties' contract; thereby entitling the Plaintiff to damages.

## FOURTH CAUSE OF ACTION:  UNJUST ENRICHMENT

45.    The Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 35 into this the Fourth Cause of Action.

46.    Defendant, by its words, actions and conduct, induced Plaintiff to enter into various agreements and to perform valuable services for Defendant.

47.    Plaintiff in return was promised reasonable compensation for its efforts and services provided.

48.    Defendant has received and continues to receive significant economic benefits from its association with Plaintiff.

49.    Defendant's breach of its promises and agreements with Plaintiff has allowed it and will continue to allow it to reap significant economic rewards which would otherwise have flowed to Plaintiff's benefits.

50.  Defendant has been unjustly enriched to the detriment of the Plaintiff as a result of Defendant's breaches.

## FIFTH CAUSE OF ACTION: PROMISSORY ESTOPPEL

51.  The Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 30 and paragraphs 33 and 34 into this the Fifth Cause of Action.

52.  Defendant, through promises in its words, actions and conduct, induced Plaintiff to enter into various agreements and to provide services to Defendant.

53.  Defendant assured Plaintiff that it would receive reasonable and agreed upon compensation for its efforts. The compensation agreed upon was less than Plaintiff's normal fee.

54.  Plaintiff reasonably relied upon Defendant's promises by entering into various agreements with Defendant, and by expending efforts to identify, screen and present qualified candidates for various positions Defendant was looking to fill.

55.  Defendant knew or should have known that Plaintiff would rely on its promises.

56.  Plaintiff's reasonable reliance on Defendant's promises has caused it damages.

57.  Because of Defendant's refusal to pay O'Keefe for its services which have been rendered, justice can only be achieved by the enforcement of the agreements by this Court.

## SIXTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

58. The Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 30 and paragraphs 33 and 34 into this the Sixth Cause of Action.

59. TCP failed to exercise reasonable care or competence in communicating false information to O'Keefe.

60. TCP knew or should have known that O'Keefe would rely on the false information to influence its conduct.

61. O'Keefe justifiably relied upon this false information.

62. O'Keefe has been harmed by its reliance upon TCP's negligent misrepresentation, thereby entitling it to damages.

## SEVENTH CAUSE OF ACTION: FRAUDULENT MISREPRESENTATION

63. The Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 30 and paragraphs 33 and 34 into this the Seventh Cause of Action.

64. In an effort to induce O'Keefe into searching for, evaluating and presenting candidates for hire, TCP misrepresented that it would compensate O'Keefe for its efforts in accordance with the parties' agreements.

65. TCP failed to reveal its true intentions that it would only pay O'Keefe as necessary to ensure that it received qualified candidates for all the positions it sought.

66. TCP had and has a practice of not honoring its representations to recruiters and other contractors.

67. TCP made and continues to make false and fraudulent representations in an effort to avoid paying O'Keefe the amounts due pursuant to the parties' agreements.

68. TCP's ongoing misrepresentations and omissions described above were false representations made as statements of fact.

69. TCP's ongoing misrepresentations and omissions described above were untrue and known to be untrue when made.

70. TCP's ongoing misrepresentations and omissions described above were made to induce O'Keefe to enter into agreements with TCP and search for, evaluate and present candidates to TCP.

71. As a result of these ongoing misrepresentations and omissions, and as a result of TCP's fraudulent and willful acts, O'Keefe has suffered damages.

## EIGHTH CAUSE OF ACTION: VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT

72. The Plaintiff hereby re-alleges and incorporates by reference paragraphs 63 through 71 into this the Eighth Cause of Action.

73. The acts of TCP as set forth above offend public policy, constitute immoral, unethical, oppressive and unscrupulous conduct, and cause substantial injury to consumers.

74. By virtue of this conduct, TCP has violated the Connecticut Unfair Trade Practices Act, C.G.S. §42-110a, et seq.

75. As a result of the foregoing, O'Keefe has suffered ascertainable loss of money or property, thereby entitling it to damages.

## NINTH CAUSE OF ACTION: QUANTUM MERUIT

76. The Plaintiff hereby re-alleges and incorporates by reference paragraphs 45 through 49 into this the Ninth Cause of Action.

77. Plaintiff has suffered economic loss as a result of Defendant's failure to honor its promises and agreements, thereby entitling it to damages.

**VI.  DAMAGES:**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendant, and award the following:

a. Money damages as to all counts;

b. Punitive damages and attorneys' fees as to Counts Three, Seven and Eight, including pursuant to C.G.S. §42-110g;

c. Pre-judgment and post-judgment interest as to all counts at the highest lawful interest rate, including pursuant to C.G.S. §37-3a;

d. Costs as to all counts; and

e. Such other and further relief as the Court deems just and equitable.

**VII.  JURY DEMAND:**

Plaintiff demands a jury trial as to all claims triable to a jury.

THE PLAINTIFF

BY _____
Francis D. Burke
MANGINES & BURKE, LLC
1115 Main Street, Suite 708
Bridgeport, CT 06604
(203) 336-0887
Fed. Bar No. ct18688

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, via U.S. Mail, postage prepaid, this 30th day of April 2004, to:

David A. Ball, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, CT 06604

_____
Francis D. Burke