**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

‗_____

O'KEEFE & ASSOCIATES, INC.

           Plaintiffs,

v.

THEME CO-OP PROMOTIONS, INC.

           Defendants.

_____

Civil Action No.
3:00-CV-678 (SRU)

MARCH 8, 2005

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**

      Defendant Theme Co-op Promotions, Inc. ("Theme Co-op") respectfully submits this

memorandum of law in Opposition to the Plaintiff's Motion to Dismiss and/or for Summary

Judgment dated November 29, 2004.

**I.      PRELIMINARY STATEMENT.**

      In its Motion to Dismiss and/or for Summary Judgment, O'Keefe & Associates, Inc.

("O'Keefe") completely ignores the enormous factual record in this case. O' Keefe fails to

mention any of the evidence that reveals O'Keefe' s breach of contract and its fraudulent and

negligent misconduct. O' Keefe engaged in a scheme to induce Theme Co-op to pay

commissions for employees that O' Keefe recruited. Unbeknownst to Theme Co-op, when

O' Keefe conducted personality tests on the candidates, it concealed from Theme Co-op negative

test results and instead presented candidates with glowing personality assessments. O' Keefe

failed to test some candidates altogether, failed to conduct reference checks for certain

candidates, and neglected to perform any background verifications on any of the employees it

presented to Theme Co-op.  As a result, O'Keefe breached its agreements with Theme Co-op, failed to present the "most qualified candidates" (as it had promised), and through its fraudulent acts wrongfully took commissions from Theme Co-op.

This fact pattern, which was first uncovered in discovery in this case, defeats virtually every argument O'Keefe makes.  There are genuine issues of material fact which provide strong evidentiary support for Theme Co-op's counterclaims.  Further, none of Theme Co-op's counterclaims is time-barred as each claim was asserted within a matter of months after O'Keefe's fraudulent concealment came to light.

Oddly, more than a year and a half after Theme Co-op filed its Amended Counterclaims, O'Keefe purports to bring a Rule 12(b)(6) motion to dismiss as to certain claims.  O'Keefe tries to bring this motion even though the deadlines for asserting motions to dismiss have long since passed, and the Court has not given O'Keefe leave to raise this motion at the eleventh hour.  Regardless, all of Theme Co-op's claims were properly asserted, rendering the motion to dismiss baseless.

O'Keefe's Motion to Dismiss and/or for Summary Judgment should be denied in its entirety.

## II.    FACTS.

Defendant and Counterclaim-Plaintiff Theme Co-op is an advertising and marketing firm incorporated in the State of California.  See Affidavit of Gerry Gersovitz dated March 4, 2005 ('Gersovitz Aff.') at ¶ 3.  Plaintiff and Counterclaim-Defendant O'Keefe is an employment search firm incorporated in the State of Connecticut.  See O'Keefe's Rule 56(a) Statement of Facts in Support of Summary Judgment ('O'Keefe's Facts') at ¶ 1.

### A.    The Agreements

Theme Co-op and O'Keefe entered into various agreements between July 29, 1998 and January 4, 1999 (collectively, the "Agreements").  See O'Keefe's Exhibits submitted in conjunction with its motion (collectively 'O'Keefe's Exs.'), Exs. 1-5.  Theme Co-op retained O'Keefe to conduct a nationwide search to locate individuals for employment with Theme Co-op in accordance with the Agreements.  See Gersovitz Aff. at ¶ 6.  The Agreements obligated O'Keefe to:

(1)    Develop a Position Specification which describes the basic duties and responsibilities of the position;
(2)    Search the field to locate executives with qualifications closely matching the specifications;
(3)    Interview the most qualified candidates to obtain a comprehensive understanding of their accomplishments and potential; and
(4)    Present the most qualified candidates to the client for evaluation.

See O'Keefe's Exs. 1-5.   Provided that O'Keefe complied with each of these obligations, the Agreements obligated Theme Co-op to pay commissions to O'Keefe. See O'Keefe's Exs. 1-5.

In an effort to court Theme Co-op's business, O'Keefe emphasized its unique ability to present the most qualified candidates because of its personality testing.  See Gersovitz Aff. at ¶

9. This sales pitch was an essential factor in Theme Co-op's decision to enter into a contractual relationship with O'Keefe. <u>See</u> Gersovitz Aff. at ¶ 10.

At the time the parties entered into the Agreements, O'Keefe and Theme Co-op reached an understanding that to carry out its responsibilities under the Agreements, O'Keefe would be obligated to: (1) conduct personality testing on candidates, in order to gauge the candidates' character traits and ability to perform certain tasks; (2) report the testing results to Theme Co-op through "personal appraisal reports" or profiles of the candidates, (3) conduct reference checks, and (4) verify the candidates' employment histories. <u>See</u> Theme Co-op's Exhibit K, the March 11, 2003 Deposition Transcript of Paul Sampson ('Sampson Dep.') at pp. 56, 58, 83 –84; 93 – 94; 113; ; <u>See also</u> Gersovitz Aff. at ¶ 11.

Between November 9, 1998 and January 24, 2000, relying on O'Keefe's recommendations, Theme Co-op hired a number of the candidates and paid $220,000 in commissions to O'Keefe. <u>See</u> Gersovitz Aff. at ¶ 12. Specifically, Theme Co-op hired Robert Cooke, Steve Regan, John Sandwick, Carey Rogers, Lori Rice, Rick Banez, Crystal Hudson, Todd Nonken, and Siena Long in reliance on O'Keefe's representations that they were the 'most qualified candidates' for the positions for which they were hired. <u>See</u> Gersovitz Aff. at ¶ 13.

      B.      <u>O'Keefe breached the Agreements</u>.

O'Keefe failed to perform the services required under the Agreements because it did not present the 'most qualified candidates' to Theme Co-op. <u>See</u> Gersovitz Aff. at ¶ 14. Rather, in violation of the Agreements, O'Keefe: (1) failed to test certain candidates; (2) fraudulently concealed from Theme Co-op, and blatantly mischaracterized, the negative testing results of

those candidates it did test; (3) failed to conduct reference checks; and (4) neglected to verify the candidates' employment histories.  See Gersovitz Aff. at ¶ 15.

> 1.    O'Keefe fraudulently concealed negative information about the candidates to induce Theme Co-op to hire the candidates and to pay O'Keefe commissions

During the discovery process in this case, Theme Co-op uncovered O'Keefe's fraudulent scheme.  See Gersovitz Aff. at ¶ 16.  In many instances where O'Keefe conducted the personality testing that "sold" Theme Co-op on its services, O'Keefe hid any negative results from Theme Co-op or fabricated the results, misleading Theme Co-op into believing the candidates were the "most qualified" for the positions for which they were presented.  See Gersovitz Aff. at ¶ 17.  At his deposition on March 11, 2003, Paul Sampson, a principal of O'Keefe, disclosed for the first time that the testing results appeared on internal O'Keefe documents entitled "Confidential."  See Theme Co-op Exs. B, D, F, H, and J; See Gersovitz Aff. at ¶ 18.  Significantly, O'Keefe failed to disclose any of the Confidential memoranda, and instead provided to Theme Co-op personal appraisal reports, in which all negative test results were omitted.  See Gersovitz Aff. at ¶ 19.  Indeed, Theme Co-op had never seen Exhibits B, D, F, H and J, the "Confidential" memoranda, before they were produced in the course of discovery on or about December 2002.  See Gersovitz Aff. at ¶ 44.  Moreover, Theme Co-op did not have any understanding of the meaning of Exhibits B, D, F, H and J until Paul Sampson revealed during his March 11, 2003 deposition that these were internal O'Keefe documents containing the test results for certain candidates.  This was the first time O'Keefe's fraudulent scheme was revealed.  See Gersovitz Aff. at ¶ 45.

In making its hiring recommendations, O'Keefe assured Theme Co-op as to the outstanding personality traits of the candidates, and in the personal appraisal reports presented to

Theme Co-op only the rosiest portraits of each candidate's abilities. <u>See</u> Gersovitz Aff. at ¶ 20; <u>See</u> <u>also</u> Theme Co-op Exs. A, C, E, G and I.  If O'Keefe had disclosed to Theme Co-op the actual testing results -- which often contained negative information showing the candidates to be unqualified for the positions for which they were being considered -- Theme Co-op never would have hired these candidates.  <u>See</u> Gersovitz Aff. at ¶ 21.  Indeed, regardless of whether some of these employees ultimately performed competently, or incompetently, the moment O'Keefe buried negative information and instead presented to Theme Co-op a false picture of the candidates' supposed qualifications, O'Keefe had breached its Agreements with Theme Co-op and committed fraud.

In his deposition, Paul Sampson admitted that as a matter of general course, to the extent O'Keefe was aware of negative traits resulting from its tests, O'Keefe would disclose those traits to the client so that it had "complete information."  <u>See</u> Sampson Dep. at p. 125.  However, in virtually every instance that O'Keefe presented a candidate's testing results to Theme Co-op, O'Keefe intentionally disclosed only the positive testing results and hid the negative testing results.  <u>See</u> Gersovitz Aff. at ¶ 22.  Moreover, in the case of Todd Nonken, O'Keefe blatantly fabricated the testing results.  <u>See</u> Sampson Dep. at pp. 263, 265; <u>See</u> <u>also</u> Theme Co-op's Exs. G, H.

For example, pursuant to the July 29, 1998 agreement, O'Keefe agreed to "[p ]resent the most qualified candidates to [Theme  Co-op]" for three positions as National Accounts Managers.  <u>See</u> O'Keefe's Ex. 1 ;  <u>See</u> <u>also</u> Sampson Dep. at p.p. 91-92.  Sampson acknowledged that strategic skills and attention to detail are essential for this position.  <u>See</u> Sampson Dep. at p.p. 88; 137-38; 141.  However, O'Keefe inexplicably presented candidates for these positions, Steve Regan, John Sandwick and Robert Cooke, whose test results indicated that each of these

candidates were *"not strategic."* Further, Regan's test results indicated that he was *"not detail oriented*," and Sandwick's test results indicated that he was *"light on details."* See Theme Co-op's Exs. B, D, F (emphasis added).

At no time did O'Keefe inform Theme Co-op about the negative testing results for Regan, Sandwick or Cooke. See Theme Co-op's Exs. A, C, E; see also Sampson Dep. at p. 138; see also Gersovitz Aff. at ¶¶ 23, 24, 25. Instead, O'Keefe raved about the employees; Cooke and Sandwick received O'Keefe's "strongest recommendation;" Regan was described as "a real pro" who "will have an immediate impact on the TCP business." See Theme Co-op's Exs. A, C, E.

In another instance, Theme Co-op engaged O'Keefe to search for candidates for the position of Director of Marketing and Proposal Development. Although the ability to make major decisions was essential to this managerial position, O'Keefe presented Todd Nonken to Theme Co-op. See Sampson Dep. at pp. 258-59, 264; See also Theme Co-op's Ex. G.

Nonken's test results indicated that he had an "average energy level" and "major decisions will come hard." See Theme Co-op's Ex. H. O'Keefe did not reveal these negative traits in Nonken's personal appraisal report and never disclosed this information to anyone at Theme Co-op. See Theme Co-op's Ex. G; See Sampson Dep. at p. 263, p. 265; See also Gersovitz Aff. at ¶ 26. Most strikingly, in *direct contradiction to the testing results*, O'Keefe proclaimed to Theme Co-op that Nonken had "high energy", and recommended that Theme Co-op hire him for a management level position. See Theme Co-op's Ex. G.

Similarly, for the position of Field Communications Manager, Sampson admitted that a key trait for this position is high energy level. See Sampson Dep. p. 202. O'Keefe presented Rick Banez for this position despite the fact that his testing results showed his "energy level is below average." See Theme Co-op's Ex. J; See also Sampson Dep. at p. 202. Sampson

admitted that O' Keefe failed to disclose this negative test result to Theme Co-op when O' Keefe recommended Banez to be hired. <u>See</u> Sampson Dep. at p. 204; <u>See also</u> Gersovitz Aff. at ¶ 27.

        2.      O' Keefe failed to check references, failed to verify background
               <u>information, and failed to conduct testing on certain employees</u>.

Aside from hiding negative testing results, it became clear that O'Keefe also breached the Agreements in a number of other ways. O'Keefe failed to provide any documents in discovery, or to proffer <u>any evidence</u>, proving that it checked references for Cooke, Regan, Sandwick, Rice, Banez, or Nonken. <u>See</u> Gersovitz Aff. at ¶ 28. Moreover, O'Keefe has admitted that it never verified any of the candidates' employment histories. <u>See</u> Sampson Dep. at p.53. Further, in the cases of Hudson, Rogers and Long, there is no evidence that O' Keefe conducted testing. <u>See</u> Gersovitz Aff. at ¶ 29.

In his deposition, Sampson down-played the importance of conducting reference checks, but he nevertheless admitted that in most instances O' Keefe did <u>not</u> conduct these checks. <u>See</u> Sampson Dep. at p.94-95; 167-168. He did, however, claim that he performed "informal" reference checks, where he would call his contacts at companies where the candidates had worked. <u>See</u> Sampson Dep. at p. 94. Strangely, Sampson testified that "he could not recall who he spoke to" for any of the purported informal reference checks that he claimed to have done for Regan, Sandwick, Nonken and Banez. <u>See</u> Sampson Dep. at pp. 136, 152, 202-203, 276, 277. Sampson said that he did not make any handwritten notes of these purported reference checks, because he had a concern that informal reference checking was "illegal". <u>See</u> Sampson Dep. at p. 169. In sum, there is virtually no evidence that these reference checks were ever done.

Additionally, Theme Co-op understood that in presenting the "most qualified" candidates, O' Keefe would conduct verifications of the candidates' employment histories. <u>See</u> Gersovitz

Aff. at ¶ 11.  Sampson admitted that he never conducted these verifications for any of the

candidates O' Keefe presented to Theme Co-op. See Sampson Dep. at p. 53.

While Sampson does concede that O' Keefe was obligated to conduct personality testing,

O' Keefe failed to produce any documents showing that it had ever tested candidates Cary

Rogers, Crystal Hudson, or Sienna Long.  See Gersovitz Aff. at ¶ 29.  Although O' Keefe

produced certain documents indicating that Lori Rice was tested, O' Keefe has never produced the

internal "Confidential" memorandum which contains the results of her test.  See Gersovitz Aff. at

¶ 30.  As noted above, when it did conduct the testing, O' Keefe fraudulently concealed all

negative test results from Theme Co-op.

One of the positions that O' Keefe was hired to fill was for the high-level management

position of Vice President of Business Development.  See Gersovitz Aff. at ¶ 31.  Although

O' Keefe was retained to fill this position on January 4, 1999, it presented virtually no candidates

for the position for months.  See Sampson Dep. at pp. 244-45.  Thus, Theme Co-op did not have

a group of candidates from which to choose, and was even more dependent on O' Keefe' s

recommendations.  See Gersovitz Aff. at ¶ 31.

Siena Long was eventually hired for the position of Vice President of Business

Development after an almost year long search.  See Theme Co-op's Exhibit L, the March 6, 2003

Deposition Transcript of Gerry Gersovitz ('Gersovitz Dep.') at p. 74.  However, O'Keefe did

not initially present Long to Theme Co-op.  Rather, Long was presented to O' Keefe by Theme

Co-op, and Theme Co-op then presumed that O' Keefe would interview her and then perform,

testing, reference checks, and verification of her background information.  Theme Co-op further

understood that O' Keefe would presenLong back to Theme Co-op only if she was found to be

qualified.  See Gersovitz Aff. at ¶ 32.  Incredibly, O'Keefe did not even interview Long for this

position.  See Sampson Dep. at pp. 245-248.  Rather, O'Keefe initially interviewed  Long for the

lower level position of Director of Business Development and Marketing.  See Sampson Dep. at

p. 245.  When Long did not express interest in the Director position, O'Keefe, *without*

*interviewing, testing or verifying Long's employment history to assess her qualifications for the*

*Vice President's role*, recommended Long for the higher level position of Vice President of

Business Development.  See Sampson Dep. at pp. 245-248; See also Gersovitz Dep. at pp. 38,

149.

In sum, there is clear evidence that O'Keefe:  (1) failed to present the "most qualified

candidates," (2) misrepresented the candidates' qualifications, and fraudulently concealed

negative testing results, (3) failed to test and reveal to Theme Co-op that it failed to test the

candidates, and (4) failed to conduct reference checks and verify employment histories.  O'Keefe

is liable to Theme Co-op under each of Theme Co-op's Amended Counterclaims.

3.     O' Keefe never presented certain employees, despite
       Theme Co-op paying O' Keefe commissions for those employees

In addition to the wrongdoing set forth above, there is a material dispute as to whether

O' Keefe even presented certain employees to Theme Co-op.  O' Keefe never presented certain of

the candidates for which it collected commissions:  Long, Regan and Rice.  See Gersovitz Aff. at

¶ 46.

Long, Regan and Rice were all candidates who *Theme Co-op* presented to O' Keefe, and

then presumed that O' Keefe would interview and then perform, testing, reference checks, and

verification of background information.  Theme Co-op further understood that O' Keefe would

present these candidates back to Theme Co-op only if the candidates were found to be qualified.

See Gersovitz Aff. at ¶ 32.

4.    O' Keefe presented unqualified candidates

Shortly after Theme Co-op hired the candidates, it became apparent that many of the employees were in fact unqualified.  See Gersovitz Aff. at ¶ 35.  For example, Theme Co-op hired Robert Cooke, John Sandwick, and Steve Regan to fulfill the sales oriented positions of National Account Managers.  See Gersovitz Aff. at ¶ 36.  During the six months and one week that Cooke was employed at Theme Co-op, Cooke generated zero sales and did not have any imminent sales on the horizon.  See Gersovitz Dep. at 156.  Furthermore, Cooke generally lacked the patience or perseverance for a long selling cycle and failed to engender trust among co-workers, clients or prospective clients.  See Gersovitz Aff. at ¶ 37.

Regan's tenure at Theme Co-op was similarly poor.  In the eight months and three weeks that Theme Co-op employed Regan, he also failed to generate adequate sales.  See Gersovitz Aff. at ¶ 38.  It was evident that Regan also lacked the patience or perseverance for a long selling cycle and he did not display energy, enthusiasm or persuasive abilities.  Id.

Although Sandwick' s tenure at Theme Co-op was longer, it also became apparent to Theme Co-op that Sandwick would not be able to meet sales expectations, and Theme Co-op invited Sandwick to resign from his position. See Gersovitz Aff. at ¶ 39.

Similarly, approximately four months to the day that he was hired, Theme Co-op terminated Todd Nonken, Director of Marketing and Proposal Development, due to his 'boredom," his lack of commitment to Theme Co-op, his lack of qualification for the position for which he had been hired, his lack of effort, and his poor hours.  See O'Keefe's Ex. 19;  See also Gersovitz Aff. at ¶ 40.

Carey Rogers was unable to meet Theme Co-op's sales expectations.  See Gersovitz Dep. at pp. 49-50.  Consequently, Theme Co-op indicated to Rogers that if he did not resign from his

position as Director of National Accounts, there was a likelihood that Theme Co-op would fire him.  Id.  Likewise, issues regarding the performance of Field Communications Manager, Crystal Hudson, factored into her termination.  See Gersovitz Dep. at p. 112.

      Additionally, as a result of her poor job performance, Theme Co-op demoted Siena Long from her position as Vice President of Business Development to Director of Business Development and Marketing and eventually gave her the option to resign from her position.  See Gersovitz Dep. at p. 145.  More specifically, Long was unable to build effective working relationships.  She was not a team player, did not take direction well, was not willing to learn from others, failed to work effectively with subordinates, and never took the time to understand the Theme Co-op selling process or the field communications function.  Long failed to follow company policies and administrative procedures and did not adequately adhere to priorities.  Moreover, she was error prone and performed negligently.  See Gersovitz Aff. at ¶ 41.

      The failings of many of these employees are the predictable results of O'Keefe's fraudulent scheme.  However, it must be emphasized that even if some of the candidates had performed adequately, O'Keefe still breached the agreements and engaged in fraud by concealing negative testing results from Theme Co-op, and falsely providing only positive information about the candidates it presented.  O'Keefe should have provided Theme Co-op complete information so that it could make informed decisions, rather than the misleading manner in which O'Keefe presented these candidates.

### III.    ARGUMENT.

O'Keefe's attempts to dismiss or gain summary judgment in connection with Theme Co-op's Amended Counterclaims must be rejected. The detailed factual record set forth above provides more than just a basis to deny summary judgment because of the presence of genuine issues of material facts. In fact, the record completely substantiates all of the counterclaims asserted by Theme Co-op.

There is likewise no basis for dismissal of any of these claims. First, O'Keefe has no right to suddenly bring a 12(b)(6) motion at this stage. The Amended Counterclaims have been pending for a year and a half, and O'Keefe has apparently intended to wait until *after* the completion of discovery to complain about the sufficiency of certain pleadings. The court's scheduling order in this case, as in most cases, set deadlines for motions to dismiss before discovery, and "dispositive motions" (i.e., summary judgment motions) after the completion of discovery. Unlike Theme Co-op, O'Keefe has received no judicial leave to file a motion to dismiss at this stage.[1] Accordingly, O'Keefe's tactics should not be permitted and this Court should summarily reject its entire 12(b)(6) motion.

Even if the Court was to allow this belated 12(b)(6) challenge, O'Keefe's hyper-technical arguments fail, as all of Theme Co-op's claims are properly pled. However, in the event the Court finds some technical pleading deficiency on any claim, Theme Co-op respectfully requests that the Court grant it leave to re-plead to correct the deficiency.

---

[1] On August 20, 2004, this Court granted Theme Co-op explicit permission to file a Rule 12(b)(6) motion to challenge the sufficiency of the allegations in O'Keefe's very late Amended Complaint. Pursuant to the Court's order, Theme Co-op filed a timely motion to dismiss on September 29, 2004. The Court never extended this order to allow for the belated challenge to the sufficiency of Theme Co-op's pleadings now that discovery is complete.

Lastly, the Court has the ability to convert the 12(b)(6) motion to a motion under Rule 56. As described throughout this memorandum, Theme Co-op has presented a strong factual record to defeat all of O'Keefe's summary judgment arguments.

**A.    There is no basis for summary judgment on Theme Co-op's Amended Counterclaim for breach of contract (Count One) because the evidence reasonably supports the conclusion that O'Keefe breached the Agreements.**

Contrary to O'Keefe's baseless arguments, which lack any factual or legal merit, genuine issues of material fact exist with respect to Theme Co-op's Amended Counterclaim for breach of contract, rendering summary judgment improper. Following discovery it is now clearer than ever that O'Keefe failed to present qualified candidates to Theme Co-op and engaged in a wrongful scheme to induce Theme Co-op to pay commissions. O'Keefe's actions amount, at the very least, to a breach of contract.

1.    <u>O'Keefe breached its duties under the Agreements</u>.

Theme Co-op has adduced evidence demonstrating O'Keefe did not present the "most qualified candidates," to Theme Co-op as required under the Agreements. Therefore, because a jury could reasonably conclude that O'Keefe breached its contractual obligations under the Agreements, O'Keefe has not met its burden and is not entitled to summary judgment on Theme Co-op's Amended Counterclaim for breach of contract.

The Agreements required O'Keefe to present the "most qualified candidates." There is no dispute that to do so, O'Keefe was required to interview the candidates, conduct personality testing, and check references. <u>See</u> Gersovitz Aff. at ¶¶ 7, 11. There appears to be a genuine dispute as to whether O' Keefe was also required to conduct verification of candidates' employment histories. Gersovitz understood that this task was required. <u>See</u> Gersovitz Aff. at ¶

11.  The facts in this case demonstrate that O'Keefe breached the Agreements by failing to perform these contractually agreed upon tasks.

O'Keefe conducted personality testing to determine the qualifications of some of the candidates.  However, on virtually every occasion when the tests revealed negative information as to the candidates' qualifications, O'Keefe concealed the negative information and presented the candidate anyway.  Thus, O'Keefe was aware of material, negative information as to the qualifications of Regan, Sandwick, Cooke, Nonken and Banez, which it hid from Theme Co-op.  See Gersovitz Aff. at ¶¶ 23-27.  Once O'Keefe proceeded to present these candidates to Theme Co-op, it breached its contractual obligation to present only the most qualified candidates.

Aside from hiding negative testing results, it is clear that O'Keefe also breached the Agreements by failing to check references, verify candidates' employment histories, and in some instances test the candidates at all.  O'Keefe failed to proffer any evidence that it checked references for Cooke, Regan, Sandwick, Rice, Banez, or Nonken.  See Gersovitz Aff. at ¶ 28.  Moreover, O'Keefe has admitted that it never verified any of the candidates' employment histories.  See Sampson Dep. at p. 53.  Further, in the cases of Hudson, Rogers and Long, there is no evidence that O' Keefe conducted testing. See Gersovitz Aff. at ¶ 29.

As described in the Facts section of this memorandum at pp. 3-12, O' Keefe failed in its recruiting for the high-level management position of Vice President of Business Development, as it presented virtually no candidates for the position for months.  See Sampson Dep. at pp. 244-45.  This left Theme Co-op without a group of candidates from which to choose, and caused it to be even more dependent on O' Keefe' s recommendation. See Gersovitz Aff. at ¶ 31.

As noted above, Siena Long was eventually hired for the position of Vice President of Business Development after an almost year long search.  See Gersovitz Dep. at p. 74.

Incredibly, O'Keefe never interviewed Long for this position.  <u>See</u> Sampson Dep. at pp. 245-48.
Rather, O'Keefe initially interviewed  Long for the lower level position of Director of Business
Development and Marketing.  <u>See</u> Sampson Dep. at p. 245.  When Long did not express interest
in the Director position, O'Keefe, *without interviewing, testing or verifying Long' s employment
history to assess her qualifications for the Vice President's role*, recommended Long for the
higher level position of Vice President of Business Development.  <u>See</u> Sampson Dep. at pp. 245-
248; <u>See</u> <u>also</u> Gersovitz Dep. at pp. 38, 149.

        As further proof that O'Keefe failed to present the most qualified candidates, after being
hired by Theme Co-op, many of the employees performed poorly and were simply unqualified
for the position.  As detailed in the Facts section of this memorandum at pp. 11-12, Regan,
Sandwick, Cooke, Nonken, Rogers, Hudson and Long all had varying degrees of poor
performance, leading to the termination of their employment relationships with Theme Co-op.
In any event, even if all of the candidates had been outstanding performers, O'Keefe failed to
perform the functions required under its contracts and therefore breached the Agreements.

        Lastly, there is a dispute as to whether O'Keefe actually "presented" Long, Regan or Rice
at all.  In each case, these candidates were actually referred to O'Keefe by Theme Co-op, which
presumed that O' Keefe would interview and then perform, testing, reference checks, and
verification of background information.  Theme Co-op further understood that O' Keefe would
present these candidates back to Theme Co-op only if the candidates were found to be qualified
<u>See</u> Gersovitz Aff. at ¶ 32.  In the case of Long, O'Keefe never conducted an interview, a
personality test, or employment verification, in connection with O'Keefe's recommendation of
Long for a high level management position.  <u>See</u> Sampson Dep. at pp. 245-48; <u>See</u> <u>also</u>
Gersovitz Dep. at pp. 38, 149.

The fact that Theme Co-op also reviewed the candidates' resumes and conducted its own interviews, in no way absolves O'Keefe from its breach. O'Keefe Motion Papers at 14. O'Keefe failed to present a complete picture of each candidate, preventing Theme Co-op from making an informed hiring decision. There is also no question that Theme Co-op relied heavily on O'Keefe's recommendations as to each candidate. If O'Keefe had told Theme Co-op the truth about the test results, Theme Co-op would never have hired the candidates, or paid commissions to O'Keefe. See Gersovitz Aff. at ¶¶ 13, 21.

In sum, the record supports the conclusion that O'Keefe breached many of its obligations under the Agreements, rendering summary judgment improper in connection with Theme Co-op's Amended Counterclaim for breach of contract.

2.      Because the introduction of parol evidence is needed to clarify O'Keefe's duties under the Agreements,  summary judgment is improper on Theme Co-op's Amended Counterclaim for breach of contract.

The language in the Agreements regarding O'Keefe's obligations is ambiguous. While the Agreements require O'Keefe's presentation of the most qualified candidates, many of the details of the tasks O'Keefe was required to perform to meet this obligation were based on verbal understandings between the parties. Hence, because parol evidence must be introduced to further articulate the terms -- and consequently O'Keefe's duties -- under the Agreements, O'Keefe's motion for summary judgment must be denied.

'The terms of a written contract intended by the parties to set forth their entire agreement may not be varied by parol evidence…However, parol evidence may be considered if relevant and if an agreement has been shown not to be integrated. Stetzer v. Dunkin' Donuts, Inc., 87 F. Supp. 2d 104, 112 (D. Conn. 2000) (denying summary judgment on breach of contract claim

where language of agreements regarding the plaintiff's duties was ambiguous and where the agreement was not integrated).

The language contained in the Agreements requiring O'Keefe to present the "most qualified candidates," to Theme Co-op for evaluation is ambiguous, as the details required for O'Keefe to carry out this duty are not spelled out in writing. See O'Keefe's Exs. 1-5. Rather, these details were the subject of contemporaneous understandings between the parties. See Gersovitz Aff. at ¶¶ 5, 11. O'Keefe admits that its duties to Theme Co-op were not entirely spelled out in the Agreements. See Sampson Dep. at page 226; See also O'Keefe's Ex. 5. In addition, the Agreements do not contain integration clauses. See O'Keefe's Exs. 1-5.

Therefore, because the Agreements do not "purport to represent the final and complete agreement of the parties," Theme Co-op is "entitled to offer extrinsic evidence to the trier of fact to vary and even to contradict the disputed term." See Stetzer, 87 F. Supp.2d at 113. In this case, Theme Co-op has demonstrated that it understood that in order for O'Keefe to present the most qualified candidates, O'Keefe was obligated to interview the candidates, test the candidates, conduct reference checks, and verify employment histories. See Gersovitz Aff. at ¶ 11. Theme Co-op also had a clear understanding that O'Keefe would disclose the testing results through profiles of the candidates. See Sampson Dep. at p. 125 and Gersovitz Aff. at ¶ 11. This evidence, along with the fact that O'Keefe breached each and every one of these obligations, must be submitted to a trier of fact. These issues cannot be adjudicated at the summary judgment stage.

3.    O'Keefe's arguments supporting summary judgment are not
      supported by the record, and are based on inadmissible evidence.

In support of its motion, O' Keefe extracts a couple of pages of documents to argue that Theme Co-op' s internal documents somehow prove that O' Keefe did not breach the Agreements.  First, the admissible documents upon which O' Keefe relies do nothing to eliminate the genuine issue of material fact as to whether O' Keefe presented qualified candidates.  Second, O'Keefe impermissibly attempts to bolster its argument by introducing a number of inadmissible documents.  Accordingly, contemporaneously with the filing of this motion, Theme Co-op has filed a Motion to Strike O' Keefe' s Exhibits 6, 7, 8, 9, 17, 20 and 21.

a.    Theme Co-op's internal documentation does
      not undermine any of its Amended Counterclaims.

O'Keefe erroneously states in its Motion Papers that 'the documentation [Theme Co-op] received [from O'Keefe], including [Theme Co-op's] own internal documentation," undermines Theme Co-op's position that the candidates were not qualified.  See O'Keefe's Motion Papers at 14.  However, the documentation O'Keefe cites to support this argument actually *undermines O'Keefe's position*, and, in any event, this small sampling of documents hardly eliminates the fact dispute as to whether the employees were qualified.

Indeed, certain of the exhibits O'Keefe relies upon to support  its position actually reinforce Theme Co-op's argument that many of the candidates were unqualified.  See, e.g., O'Keefe's Ex. 14 (letter dated April 27, 2001 from Gersovitz to Crystal Hudson, terminating Hudson's employment due to 'disappointing sales results'); O'Keefe's Ex. 19 (letter dated December 1999 from Gersovitz to Nonken inviting Nonken to resign because Nonken is

'bored"). Thus, the documents upon which O'Keefe relies tend to support the fact that O'Keefe

breached the Agreements.

Of course, in reality, the most important documents in this case are those that O'Keefe

hid from Theme Co-op -- the negative test results. Now that Theme Co-op has uncovered these

documents, there is even more proof that O'Keefe failed to present the most qualified candidates

in breach of the Agreements.

       b.     Theme Co-op's alleged "internal difficulties" are irrelevant
           and have no bearing on the viability of its Counterclaims.

O'Keefe purports to introduce irrelevant and hearsay evidence to illustrate its

illogical argument that Theme Co-op's alleged 'internal difficulties' led to the candidates'

demise, rather than the candidates' lack of qualification.

First, even if there was merit to the allegation of internal difficulties existing at Theme

Co-op, this would have no bearing on whether O'Keefe fulfilled its contractual obligations under

the Agreements. As noted above, even if each of the candidates had somehow turned out to be

outstanding performers, O'Keefe still breached the Agreements by failing to perform

contractually agreed upon tasks, and by concealing material information that would have enabled

Theme Co-op to make informed hiring decisions.

Second, O'Keefe improperly supports this argument with irrelevant and inadmissible

evidence. See O'Keefe's Motion Papers at 14 (citing O'Keefe's Exs. 20 -21). O'Keefe cites to a

memorandum regarding Jeannine Salveson's exit interview and the affidavit of Stanley Johnson.

Id. Theme Co-op did not hire Jeannine Salveson through O'Keefe, and she is not a subject of

this action. Thus the memorandum is completely irrelevant. Similarly, the affidavit of Stanley

Johnson is inadmissible because it is hearsay, and because Johnson, another executive recruiter, has absolutely nothing to do with the claims or counterclaims in this case. [2]

O'Keefe's argument is not based upon any admissible evidence, and does nothing to salvage its failed claim for summary judgment.


**B.     There is no basis for dismissal or summary judgment on Theme Co-op's equitable claims (Counts Two and Three)**

1.  Theme Co-op's Amended Counterclaims for unjust enrichment and promissory estoppel should not be dismissed because each properly <u>states a claim upon which relief may be granted</u>.

O'Keefe brings a belated Rule 12(b)(6) challenge to Theme Co-op's Counterclaims for unjust enrichment (Count Two) and promissory estoppel (Count Three). Each of these claims is properly asserted as alternative pleadings to its breach of contract claim. Thus, even if the Court permits this untimely motion, these claims have been properly pled.

Theme Co-op properly alleges the requisite elements necessary to plead its Counterclaims seeking equitable relief. In its second count, unjust enrichment, Theme Co-op alleges: (1) O'Keefe obtained payment from the Theme Co-op; (2) O'Keefe was unjustly enriched by the retention of the payment; and (3) Theme Co-op suffered harm as a result of the retention of the payment. <u>See</u> Theme Co-op's Amended Counterclaims at ¶¶ 10, 36-37. These allegations meet the pleading requirements for a claim of unjust enrichment. <u>See</u> <u>Gianetti v.</u> <u>Greater Bridgeport I.P.</u>, No. CV 02396580, 2003 Ct. Sup. 8347, 8348 (2003).[3]

Likewise, in its Third Count, Theme Co-op properly alleges a claim for promissory estoppel. Theme Co-op alleges: 1) O'Keefe clearly and definitively promised to present the

---

[2]   Moreover, *assuming arguendo* the memorandum and affidavit are relevant, both are riddled with inadmissible hearsay statements and should be summarily rejected on this basis as well.
[3] Copies of all unreported decisions are attached hereto for the convenience of the Court.

"most qualified candidates," by conducting personality testing, reporting the testing results to Theme Co-op, conducting reference checks, and verifying the candidates' employment histories; 2) Theme Co-op changed its position by hiring the candidates O'Keefe presented, in reliance on O'Keefe's clear and definitive promises; 3) O'Keefe could reasonably expect to induce Theme Co-op's reliance; and 4) Theme Co-op was injured as a result of this reliance because it unnecessarily paid O'Keefe commissions.  See Theme Co-op's Amended Counterclaims at ¶¶ 1-37.  These allegations constitute the elements of a promissory estoppel claim.  See Chem Tek, Inc.  v. General Motors Corp., 816 F. Supp. 123, 131 (D. Conn. 1993) (denying motion to dismiss, finding plaintiff properly pled the requisite elements of a promissory estoppel claim). [4]

Moreover, pursuant to Fed. R. Civ. P. 8, Theme Co-op is permitted to assert counterclaims for unjust enrichment and promissory estoppel as alternative theories of recovery. See Fed. R. Civ. P. 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements..."). Similarly, under Connecticut law, a party may plead claims for unjust enrichment and promissory estoppel in the alternative to a claim for breach of contract. See Nationwide Mutual Ins. Co. v. Bland, 2003 WL 23354137 n. 10 (D. Conn. 2003) (finding under Connecticut law, plaintiff permitted to plead unjust enrichment count in the alternative while pursuing claims for breach of contract); see also Gianetti v. Greater Bridgeport I.P., No.

---

[4] It should be noted that in its Motion Papers, O'Keefe misstates the law regarding the required elements for proof of promissory estoppel and instead identifies the elements necessary for proof of the defense of equitable estoppel. See O'Keefe's Motion Papers at page 27 (citing  Connecticut Nat'l Bank v. Von, 223 Conn. 352, 366 (1995)).

CV 02396580, 2003 Ct. Sup. 8347, 8348 (2003) (denying motion to strike holding plaintiff permitted to plead unjust enrichment claim in the alternative to a claim for breach of contract) (citations omitted); General Elec. Capital Corp. v. Directv, Inc., 94 F. Supp.2d 190, 201 (D. Conn. 1999) (finding plaintiff properly pled claim for promissory estoppel as alternative to claim for breach of contract).

It appears that O'Keefe is making a hyper-technical argument that Theme Co-op's breach of contract allegations should not have been incorporated into these equitable counts. First, the pleadings could not be more clear. O'Keefe obviously has notice of the legal and equitable claims being asserted against it. See Gourdine v. Cabrini Med. Ctr., 2005 WL 481652 (2nd Cir. 2005) (denying motion to dismiss, finding where allegations in a complaint give "fair notice of what [plaintiff's] claims are and the grounds upon which they rest," federal pleading requirements satisfied) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)). However, if the Court finds some technical pleading deficiency in this respect, Theme Co-op would request leave to simply correct this minor issue.

Therefore, because Counts Two and Three of Theme Co-op's Amended Counterclaims state claims upon which relief may be granted, dismissal of these equitable claims is improper.

2.    O'Keefe is not entitled to Summary Judgment on Theme Co-op's
Amended Counterclaims seeking equitable relief

As with all of the claims asserted by Theme Co-op, there is strong evidence that defeats

O'Keefe's motion for summary judgment as to the equitable counterclaims.  Furthermore,

O'Keefe's argument that these claims are time-barred wholly fails.

a.    *Genuine issues of material fact exist in connection with Theme Co-op's Amended Counterclaims seeking equitable relief*

Because Theme Co-op pled its Counterclaims seeking equitable relief as alternative

theories of recovery to its Counterclaim for breach of contract, summary judgment is not

warranted.  In General Elec. Capital Corp. v. Directv, Inc., 94 F. Supp.2d 190, 201 (D. Conn.

1999), the court denied a motion for summary judgment on claims seeking alternative equitable

relief under the doctrines of unjust enrichment and promissory estoppel.  The General Electric

court held that "it is a disputed issue of fact as to whether equity would dictate [a party] be

compensated under [the doctrines of unjust enrichment and/or promissory estoppel if it is unable

to recover under the contract.]" Id.

Therefore, it is premature for O'Keefe to challenge the viability of Theme Co-op's

equitable counterclaims at the summary judgment stage.  There is a real question as to whether

an enforceable contract exists between the parties, and the specifics as to its terms.  Until these

issues are resolved, summary judgment is inappropriate on Theme Co-op's alternative claims for

equitable relief.

Moreover, the factual record which substantiates Theme Co-op's equitable claims is as

strong as the support for its legal claims.  As stated more fully above, the record reasonably

supports the conclusion that O'Keefe engaged in misconduct by knowingly presenting

unqualified candidates to Theme Co-op, as a result of its misrepresenting and failing to disclose the candidates' lack of qualifications to Theme Co-op.  Further, O'Keefe concedes in its Motion Papers that it accepted from Theme Co-op, and retained, commissions.  See O'Keefe's Motion Papers at 26 ('O'Keefe received partial payments for the efforts it performed pursuant to the agreements between the parties.').  There is no dispute that Theme Co-op paid O'Keefe $220,000 in commissions; thus proving that O'Keefe was unjustly enriched.

This same conduct reasonably supports the conclusion that Theme Co-op is entitled to equitable relief under the doctrine of promissory estoppel.  Because Theme Co-op detrimentally relied on O'Keefe's fraudulent misrepresentations, Theme Co-op hired the candidates and paid O'Keefe commissions in connection therewith.  See Gersovitz Aff. at ¶¶ 12, 13.

Curiously, for the first time within its Motion Papers, with no legal foundation or evidence, O'Keefe purports to assert the equitable defenses of laches and unclean hands in support of its motion for summary judgment on Theme Co-op's Counterclaims for equitable relief.  See O'Keefe's Motion  Papers at pp. 26-27.  O'Keefe has not submitted any proof that begins to support defenses of laches or unclean hands.  See Jamesbury Corp. v. Litton Indus. Prod., Inc., 427 F. Supp. 756 (D. Conn. 1977) (denying summary judgment on laches defense because substantial factual issues existed as to availability of defenses); Ruotolo v. Sherwin-Williams Co., 622 F. Supp. 546, 551 (D. Conn. 1985) (denying summary judgment, 'reluctant to apply the unclean hands doctrine in all but the most egregious situations.' ).  As a matter of substance, it is incredible that O'Keefe now asserts laches and unclean hands at the eleventh hour to avoid equitable claims.  If there are unclean hands in this case, they belong to the party that engaged in the fraudulent scheme -- O'Keefe.  Hence, O'Keefe's baseless defenses must be wholly rejected.

In sum, because a reasonable trier of fact could determine that Theme Co-op is entitled to equitable relief under the doctrines of unjust enrichment and promissory estoppel, summary judgment is inappropriate in connection with Amended Counterclaims Counts Two and Three.

>    b.    *Theme Co-op's Amended Counterclaims seeking equitable relief are not time-barred*

In its Motion Papers, O'Keefe claims that the Amended Counterclaims for unjust enrichment and promissory estoppel are time-barred. However, O'Keefe fails to state which statute of limitations is allegedly applicable to these claims. See O'Keefe's Motion Papers at pages 26-27. Since O'Keefe does not proffer any legal argument or factual evidence to support this argument, it hasn't come close to meeting its burden on summary judgment.

With respect to equitable claims, courts have held that there are no applicable statutes of limitations. See Vissa v. Pagano, 2000 WL 639137 * 3(Conn. Super. 2000) (denying summary judgment, refusing to apply the three-year statute of limitations governing tort claims to a claim for unjust enrichment because with claims for equitable relief, a court "need not adhere to the statute of limitations of the underlying cause of action.") ( citing to Dunham v. Dunham, 204 Conn. 303, 327 (1987)). Moreover, because Theme Co-op's Amended Counterclaims for unjust enrichment and promissory estoppel seek equitable remedies, "a court may provide [an equitable] remedy even though the governing statute of limitations has expired…" Vissa, 2000 WL 639137 *3 (quoting Dunham, 204 Conn. at 327).

Even assuming that O'Keefe is attempting to apply the three-year statute of limitations governing tort claims, it is clear that the Theme Co-op's claims were brought timely. On the basis that O'Keefe failed to perform the services it had promised , Theme Co-op first asserted these counterclaims on August 16, 2002 -- well within any applicable statutes of limitations.

Once Theme Co-op uncovered O'Keefe's fraudulent scheme, by receiving documents in discovery in December 2002, and then by deposing Sampson on March 11, 2003, Theme Co-op immediately filed the Amended Counterclaims just three months later. Clearly, these claims are timely.

Therefore, Theme co-op's equitable claims were timely brought within any conceivable statute of limitations, and O'Keefe's cryptic attempt to obtain summary judgment on this basis fails.

**C.     There is no basis for dismissal or summary judgment regarding Theme Co-op's <u>Amended Counterclaim for fraudulent misrepresentation (Count Four)</u>**

1.     Theme Co-op' s Counterclaim for fraudulent
           <u>misrepresentation should not be dismissed</u>.

For more than a year and half, Theme Co-op's counterclaim for fraudulent misrepresentation has been pending. Discovery has gone on for months while this claim has been pending. At no time did O'Keefe challenge the propriety of Theme Co-op's pleading under Fed. R. Civ. P. 9(b), nor did it ever seek judicial leave to file a Rule 12(b)(6) motion. Now, at the eleventh hour, O'Keefe raises this argument in a futile attempt to avoid a trial on its fraudulent conduct. These litigation tactics should not be permitted.

"A court should…hesitate to dismiss a complaint under Rule 9(b) if the defendant has been made aware of the particular circumstances for which it will have to prepare a defense at trial and that the plaintiff has substantial pre-discovery evidence of those facts. Thus, the courts have tempered the heightened pleading requirements of Rule 9(b) when the underlying purposes of Rule 9(b) have been met or when pleading each instance of the allegedly fraudulent conduct

would be impractical."  In re Cardiac Devices Qui Tam Litig., 221 F.R.D. 318, 334 (D. Conn. 2004).

Theme Co-op asserted its Amended Counterclaim on June 18, 2003.  As stated above, O'Keefe waited until November 2004 to file this motion without this Court's permission. O'Keefe is well aware of the particular circumstances for which it will have to prepare a defense at trial, and the parties have conducted substantial discovery in connection with these facts. Therefore, at this juncture, dismissal based upon the Rule 9(b) pleading requirements is improper.

Even if this court does permit O'Keefe's late challenge, a review of Theme Co-op's Amended Counterclaim for fraudulent misrepresentation (unlike O'Keefe's pleadings) demonstrates that Theme Co-op comported with the heightened pleading requirements and indeed alleged the who, what, when, and where necessary for a sufficiently pled claim of fraud. Cf. Bruce v. Home Depot, U.S.A., Inc. 2004 WL 513730 *3 (D. Conn. 2004).  Unlike the plaintiff in Bruce (and unlike O'Keefe in its own Complaint), Theme Co-op clearly alleged that O'Keefe, in an effort to induce Theme Co-op into entering the Agreements, made fraudulent statements in connection with its assertion that it would test all prospective employees and would provide to Theme Co-op a profile of the candidates including the results of the testing.  See Amended Counterclaim at ¶¶ 1-41.  O'Keefe consummated its fraudulent scheme by failing to disclose the negative testing results when it presented candidates to Theme Co-op.  See Amended Counterclaim at ¶¶ 14-16.  Moreover, Theme Co-op has pled in great detail the specific misrepresentations that occurred when O' Keefe hid negative test results relating to Regan, Sandwick, Cooke and Nonken, including alleging the specific negative test results that

were concealed.  See Amended Counterclaim at ¶¶ 16-33.  Therefore, Theme Co-op has properly pled its fraud claim.

If this court believes that more specificity is required, Theme Co-op respectfully requests that it be granted leave to correct any absence of pleading with particularity.  O'Keefe could have raised this issue months ago, and should not be rewarded for this gamesmanship.

Lastly, this Court has the ability to convert this challenge to a motion for summary judgment under Rule 56.  Theme Co-op respectfully submits that if the Court were to so exercise its discretion, it could easily dispose of this challenge, because O'Keefe cannot come close to obtaining summary judgment on the fraud claim.

2.    Summary Judgment on Theme Co-op's Amended Counterclaim
      for fraudulent misrepresentation is improper.

O'Keefe argues that it is entitled to summary judgment on the fraud counterclaim because there is no proof of fraud, and because the claim is time-barred.  See O'Keefe's Motion Papers at pp. 28-33.

Curiously, without any legal basis, O'Keefe misstates Theme Co-op's burden at this stage of the litigation.  O'Keefe erroneously asserts that at this juncture it is Theme Co-op's burden to prove through clear and convincing evidence that O'Keefe made fraudulent misrepresentations.  See O'Keefe's Motion  Papers at pp. 31-32.  This is not Theme Co-op's burden in responding to a motion for summary judgment; however, Theme Co-op has in fact submitted ample evidence, which does show clear and convincing proof of O'Keefe's fraud.  Rather, on a motion for summary judgment Theme Co-op must demonstrate simply that the record reasonably supports the conclusion that O'Keefe made fraudulent misrepresentations.  See Edwards v. Community Enter. Inc., 2003 WL 1239288*5 (D. Conn. 2003) ('[I ]f reasonable minds could differ in the

interpretation of evidence that is potentially determinative under substantive law, summary judgment is not appropriate.") (internal quotation marks and citations omitted).

       a.      *Because the record reasonably supports the conclusion that O'Keefe made fraudulent misrepresentations, summary judgment is unwarranted.*

O'Keefe fails to demonstrate anywhere within its Motion Papers that there is no genuine issue of fact warranting summary judgment on Theme Co-op's Amended Counterclaim for fraudulent misrepresentation. See O'Keefe's Motion Papers at pages 28-33. To the contrary, the record indicates that there are sufficient facts to warrant a reasonable conclusion that O'Keefe made fraudulent misrepresentations.

In Connecticut "[t]he essential elements of a cause of action in [fraudulent misrepresentation] are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury." Miller v. Bourgoin, 28 Conn. App. 491, 497-98, *cert. denied*, 223 Conn. 927, (1992) (denying summary judgment) (quoting Citino v. Redevelopment Agency, 51 Conn. App. 262, 275, 721 A.2d 1197 (1998)).

Further,

> [a]llegations such as misrepresentation and fraud present issues of fact. . . . Moreover, [w]hether evidence supports a claim of fraudulent …misrepresentation is a question of fact. . . . It is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. . . . Nevertheless, it remains incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined as a matter of law, that a genuine issue of material fact exists.

<u>Miller v. Bourgoin</u>, 28 Conn. App. at 497-98 (citations omitted and internal quotation marks omitted)

As stated more fully above, the record supports the clear conclusion that O'Keefe deceptively concealed the candidates' negative characteristics or fabricated their positive characteristics in an effort to induce Theme Co-op to enter into the agreements with O'Keefe. <u>See</u> Gersovitz Aff. at ¶¶ 11-27, 44-46.  Furthermore, it is evident that Theme Co-op paid O'Keefe commissions based upon these fraudulent misrepresentations.  <u>See</u> Gersovitz Aff. at ¶¶ 12-13.

Therefore, because genuine issues of material fact exist regarding Theme Co-op's Amended Counterclaim for fraudulent misrepresentation, summary judgment is inappropriate.

      b.      *Since Theme Co-op's Amended Counterclaim for fraudulent misrepresentation is not time-barred, summary judgment is unwarranted.*

Because O'Keefe engaged in fraudulent concealment, the three-year statute of limitations governing Theme Co-op's Amended Counterclaim for fraudulent misrepresentation is tolled pursuant to <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. § 52-595.

A fraudulent misrepresentation claim is governed by the three-year statute of limitations under <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. § 52-577.  <u>T.F.T.F. Capital Corp., v. Marcus Dairy, Inc.</u>, 33 F. Supp.2d 122,126 (D. Conn. 1998) (internal citations and quotation marks omitted).  However, where a party fraudulently conceals the existence of a cause of action grounded in fraud, <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. § 52-595 effectively tolls the governing statute of limitations.  <u>See</u> <u>Fenn. v. Yale Univ.</u>, 283 F. Supp. 2d 615, 638 (D. Conn. 2003) (finding <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. § 52-595 tolls the statute of limitations governing fraud claims).

In <u>Fenn</u>, the District of Connecticut held that <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. §52-595 tolled the three-year statute of limitations governing the defendant's counterclaim based upon fraud where the evidence established the plaintiff:  (1) was actually aware of the facts necessary to establish the cause of action grounded in fraud;  (ii) intentionally concealed these facts from the defendant; and (iii) concealed the facts in an effort to mislead the defendant into inaction.  <u>Fenn</u>, 283 F. Supp. 2d at 637-38.

O'Keefe hid its fraudulent scheme by burying testing results until it finally produced the documents in discovery in December 2002.  <u>See</u> Gersovitz Aff. at ¶ 44.  Indeed, O' Keefe' s deception is now clear.  While O' Keefe concealed from Theme Co-op Exhibits B, D, F, H and J (the "Confidential" memoranda), it instead provided to Theme Co-op Exhibits A, C, E, G, and I (the personal appraisal reports) before Theme Co-op hired these candidates.  None of the negative test results contained in the "Confidential" memoranda were disclosed in the personal appraisal reports.  <u>See</u> Gersovitz Aff. at ¶ 46.  Sampson ultimately revealed the fraudulent scheme for the first time during his March 11, 2003 deposition.  <u>See</u> Gersovitz Aff. at ¶ 45.  Theme Co-op timely filed its Amended Counterclaims in June 2003, just three months after it discovered the fraud.

As in <u>Fenn</u>, O'Keefe admits that it was actually aware that it intentionally misrepresented the qualifications of the candidates presented.  <u>See</u> Sampson Dep. at pp. 135, 137-38, 140-41, 153-54, 165.  Further, because O'Keefe intentionally concealed these fraudulent misrepresentations from Theme Co-op until March 2003 -- when Theme Co-op pressed O'Keefe to reveal the information during the course of the discovery process -- it is evident that O'Keefe was attempting to mislead Theme Co-op into inaction.  <u>See</u> Gersovitz Aff. ¶ 45.  Further, like the defendant in <u>Fenn</u>, Theme Co-op was entirely unaware of O'Keefe's deception and lies and,

consequently, its right of action for fraud until O'Keefe's revelation in March 2003.  See Gersovitz Aff. ¶ 45.  Therefore, pursuant to Conn. Gen. Stat. § 52-595, the statute of limitations for fraudulent misrepresentation must be tolled until March 11, 2003, when O'Keefe's fraudulent scheme was uncovered.

Moreover, at the very least, summary judgment on Theme Co-op's Amended Counterclaim for fraudulent misrepresentation is inappropriate because questions of fact exist regarding whether O'Keefe engaged in fraudulent concealment of the claim.  See J.F.C. Endeavors, Inc. v. Pioneer Steel Ball, Co., No. 58 70 83, 1999 Ct. Sup. 16091 (1999) (denying summary judgment holding "[n]ormally in a statute of limitations context fraudulent concealment . . . [is a question] of fact unsuited for summary judgment.") ( citing Hines v. A.O. Smith Harvestore Prod. Inc., 880 F.2d 995, 999 (8th Cir. 1989); Givens v. A.H. Robbins Co., Inc., 751 F.2d 261, 264 (8th Cir. 1984)).

**D.     There is no basis for dismissal of Theme Co-op's Amended Counterclaims
         for negligent misrepresentation (Count Five) and negligence (Count Six)**

O'Keefe argues that Theme Co-op's claims for negligent misrepresentation and negligence should be dismissed because the claims are improperly pled and time-barred.  See O'Keefe's Motion  Papers at pp. 34-35.  O'Keefe is mistaken.

1.     Theme Co-op properly states counterclaims for negligence
        and negligent misrepresentation, rendering dismissal improper.

Theme Co-op properly states claims for negligent misrepresentation and negligence. Without citing any authority for its position, O'Keefe incorrectly asserts that:  "it is axiomatic that a party may not seek recovery for alleged negligence or negligent misrepresentation when

the duty which gives rise to the claims derives from an enforceable, express written contract between the parties." O'Keefe's Motion Papers at page 35.

To the contrary, it is well-settled law that '[a] duty to use care may arise from a *contract*, from a statute, or from circumstances ...." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375 (1982) (emphasis added).  Furthermore, absent a conflict between the rules of contract and tort, a party can choose to present a cause of action and proceed with a cause of action in contract or tort or both.  Stowe v. Smith, 184 Conn. 194, 199 (1981); see also Robinson v. Parillo, No. 403691, 1999 Ct. Sup. 14036, 14041-42 (1999) ('[a] party may be liable in negligence for the breach of a duty which arises out of a contractual relationship ... The same or similar duty giving rise to an action for breach of contract may give rise to an action in tort.') ( internal citations omitted).

Therefore, because Theme Co-op appropriately alleged that O'Keefe is liable for the negligent misrepresentation and negligence derived from its breach of duties arising out of its contractual relationship with Theme Co-op, dismissal of these claims is improper.

> 2.    Theme Co-op's Amended Counterclaims for negligence
>        and negligent misrepresentation are not time-barred.

As with Theme Co-op's Amended Counterclaim for fraudulent misrepresentation, because O'Keefe engaged in fraudulent concealment, Conn. Gen. Stat. § 52-595 tolls the three-year statute of limitations provided in Conn. Gen. Stat. §52-577, which governs Theme Co-op's Amended Counterclaims for negligent misrepresentation and negligence.  Yale v. Fenn, 283 F. Supp. 2d at 636-37 (denying summary judgment holding Conn. Gen. Stat. § 52-595 tolled three-year statute of limitations governing claims of negligent misrepresentation where defendant

engaged in fraudulent concealment).[5]  As more fully discussed above, O'Keefe engaged in fraudulent concealment, until its scheme was revealed in March 2003.  Therefore, as with its Counterclaim for fraudulent misrepresentation, Theme Co-op's Amended Counterclaims for negligent misrepresentation and negligence are not time-barred.

**E.    There is no basis for dismissal or summary judgment on Theme Co-op's Amended Counterclaim seeking relief under CUTPA (Count Seven).**

Dismissal of Theme Co-op's Amended Counterclaim seeking relief under CUTPA is improper because Theme Co-op properly states a claim under CUTPA upon which relief may be granted.  Moreover, summary judgment is unwarranted because there are genuine issues of material fact in connection with Theme Co-op's claim for relief, and O'Keefe's fraudulent concealment tolled the three-year statute of limitations.

1.    <u>Dismissal of Theme Co-op's CUTPA Counterclaim is improper</u>.

Theme Co-op properly states a claim upon which relief may be granted under CUTPA. A CUTPA claim is properly pled where the allegations in a complaint assert deceptive misrepresentations that were likely to mislead.  <u>Izzarelli v. R.J. Reynolds Tobacco Co</u>., 117 F. Supp.2d 167, 176 (D. Conn. 2000) (denying motion to dismiss).  Moreover, '[u ]nlike a claim of fraud, CUTPA does not require reliance or a claim that the misrepresentation became part of the basis of the bargain.…Under CUTPA, if the message is false, then it is a deceptive act without inquiry into whether the consumer actually believed the message or whether the consumer acted reasonably in relying on it.  <u>Id</u>. (internal citations and quotations omitted).

---

[5]   O'Keefe erroneously cites to <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. § 52-584 as the statute of limitations governing Theme Co-op's negligent misrepresentation and negligence claims. This is the incorrect statute of limitation. Section 52-584 is applicable only to negligence actions seeking recovery for damages for injury to the person or to real or personal property.  <u>See</u> <u>Lombard v. Peters</u>, 79 Conn. App. 290 (2003). Because Theme Co-op is not seeking damages for personal injury or personal or real property, <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. § 52-577 governs Theme Co-op's Amended Counterclaims for negligence and negligent misrepresentation.  <u>Id</u>.

Furthermore, in a commercial context, a CUTPA claim is properly pled where the offending party was under a duty to disclose material information about a transaction but failed to do so.  Alvarez v. Fleet Nat'l Bank, No. CV 010450643S, 2004 Ct. Sup. 5553, (2004) (denying motion to strike CUTPA claim) (citing Miller v. Guimares, 78 Conn. App. 760 (2003)). "A duty to disclose will be imposed …on a party insofar as he voluntarily makes disclosure.  A party who assumes to speak must make a full and fair disclosure as to the matters about which he assumes to speak." Alvarez, 2004 Ct. Sup. at 5557 (denying motion to strike CUTPA claim where plaintiff alleged defendant was under a duty to disclose material information about a transaction but failed to do so) (quoting Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. 620, 636 (2002)).

Theme Co-op alleged that O'Keefe transmitted false information to Theme Co-op about various candidates' lack of qualifications.  Amended Counterclaim ¶ 28.  Moreover, Theme Co-op alleged that O'Keefe breached its obligation to disclose the entire body of its knowledge regarding the candidates, by fraudulently concealing negative information about the candidates, and instead disclosing only positive test results to induce Theme Co-op into paying commissions.  See Theme Co-op's Amended Counterclaims ¶¶ 14-35.  This is a valid claim of CUTPA.

Moreover, despite O'Keefe's misguided and unsupported contentions, Theme Co-op's Amended Counterclaim is precisely the type of claim CUTPA was designed to address.  The Connecticut Supreme Court has articulated that a consumer relationship is not a prerequisite for a CUTPA claim, but rather a CUTPA claim can apply to transactions between businesses.  Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 497 (1995) (holding CUTPA "gives honest businessmen great protection against deceptive or unscrupulous businessmen.")  Hence, O'Keefe's unsupported claims that CUTPA "was not designed to and does not provide

protection to a corporate entity such as [Theme Co-op] whose President, Gerry Gersovitz is an experienced and savvy businessman" is blatantly wrong.  See O'Keefe's Motion Papers at Page 36.

O'Keefe also incorrectly claims that Theme Co-op's CUTPA Counterclaim is insufficient because, although Theme Co-op alleges that it has suffered an ascertainable loss of money or property, it has not specified the amount of its loss.  See O'Keefe's Motion Papers at page 37.  This assertion is also clearly wrong.  Connecticut case law is clear:  in pleading a CUTPA claim, a party must allege an ascertainable loss, but need not allege or prove the amount of the ascertainable loss.  Hinchliffe v. American Motors Corp., 184 Conn. 607, 614 (1981).

Therefore, because Theme Co-op properly alleges a claim seeking relief under CUTPA, dismissal is unwarranted.

    2.      **Summary Judgment is not warranted in connection with Theme Co-op's CUTPA Counterclaim**.

Since the record of admissible evidence reasonably supports the conclusion that Theme Co-op is entitled to recover for O'Keefe's CUTPA violations, summary judgment is not warranted.  Moreover, because O'Keefe fraudulently concealed its wrongdoing, Theme Co-op's CUTPA claim is not time barred.  Therefore, O'Keefe's argument in support of summary judgment must be summarily rejected.

    a.      *The record reasonably supports the conclusion that Theme Co-op is entitled to relief pursuant to CUTPA.*

Aside from making irrelevant arguments and attempting to introduce inadmissible evidence, O'Keefe does not proffer any evidence of an absence of genuine issue of material fact

in connection with Theme Co-op's Amended Counterclaim for CUTPA violations.  <u>See</u>
O'Keefe's Motion  Papers at p. 37 (citing O'Keefe's Exs. 6-8). [6]  Furthermore, the record of
relevant evidence clearly supports the reasonable conclusion that O'Keefe violated CUTPA,
rendering summary judgment improper.  As stated more fully above, there is clear evidence that
O'Keefe misrepresented the candidates' qualifications to Theme Co-op by failing to disclose the
candidates' negative traits, and instead representing only positive test results to Theme Co-op.
Therefore, summary judgment of Theme Co-op's Amended Counterclaim seeking relief under
CUTPA is improper.

> **b.**     *Theme Co-op's Amended Counterclaim seeking relief under CUTPA is not*
> *barred by the applicable statute of limitations.*

As with Theme Co-op's Amended Counterclaims for negligence, negligent
misrepresentation, and fraudulent misrepresentation, O'Keefe's fraudulent concealment of its
deceptive acts similarly tolls the statute of limitations governing Theme Co-op's CUTPA claim.
Pursuant to <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. § 42-110g(f), CUTPA claims "may not be brought more than three
years after the occurrence of a violation of CUTPA."  However, where fraudulent concealment
occurs and the fraudulent concealment is not the only basis for seeking relief under CUTPA, the
statute of limitations may be tolled until the time of the discovery of the underlying CUTPA
injury.  <u>See</u> <u>Willow Springs Condo. Assn., Inc. v. 7th BRT Dev. Corp.</u>, 245 Conn. 1, 47
(recognizing fraudulent concealment tolls the three-year statute of limitations governing CUTPA
where it is not the basis for the underlying CUTPA claim); <u>See</u> <u>also</u> <u>J.F.C. Endeavors, Inc. v.</u>
<u>Pioneer Steel Ball</u>, No 587083,  1999 Ct. Sup. 16091 (1999) (same) (citing <u>Willow Springs</u>).

---

[6]  Pursuant to Fed. R. Civ. P. 408, O'Keefe's Exhibits 6-8 are inadmissible offers of compromise and therefore must
be stricken.

O'Keefe's fraudulent concealment of its deceptive misrepresentations and omissions tolls the three-year statute of limitations until March 11, 2003, and Theme Co-op timely filed its CUTPA counterclaim just three months later.

## **CONCLUSION**

O'Keefe has not met its burden of demonstrating an absence of genuine issues of material fact in connection with any of its summary judgment claims.  Further, there is no basis for the belated dismissal of any of Theme Co-op's Counterclaims.  Accordingly, O'Keefe's motion should be denied in its entirety.

**THE DEFENDANT,**
THEME CO-OP PROMOTIONS, INC.

By_____
    David A. Ball, Esq.
    Fed. Bar No. ct10154
    Cohen and Wolf, P.C.
    1115 Broad Street
    Bridgeport, CT  06604
    Tel. No. (203) 368-0211
    E-mail: dball@cohenandwolf.com

## <u>CERTIFICATION</u>

I hereby certify that on this 8th day of  March, 2005, a copy of the foregoing

Memorandum was mailed via First Class Mail, postage prepaid, to the following:

>       Francis D. Burke, Esq.
>       Mangines & Burke LLC
>       1115 Main Street
>       Suite 708
>       Bridgeport, CT  06604


_____

David A. Ball, Esq.