# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

_____

O'KEEFE & ASSOCIATES, INC.

           Plaintiffs,

v.

THEME CO-OP PROMOTIONS, INC.

           Defendants.

_____

Civil Action No.
3:00-CV-678 (SRU)


MARCH 8, 2005

## LOCAL RULE 56(a)(2) STATEMENT OF FACTS

**I.**        **Responses to Plaintiff's Rule 56(a) Statement of Undisputed Facts.**

      1.     Plaintiff, O'Keefe & Associates, Inc. (O'Keefe) is an employment search firm headquartered in Southport, Connecticut. (Ex. 22 at 9, Ex. 23 at 7.)

RESPONSE:  **Admitted.**

      2.     O'Keefe performs employment searches for executives primarily in the sales and marketing field for companies throughout the United States. (Ex. 23 at 16-17.)

RESPONSE:  **Admitted**

3.    Theme Co-op Promotions, Inc. ("Theme") is an advertising and marketing firm with a principal place of business in San Francisco, California. (Ex. 24.)

RESPONSE:  **Admitted.  The name of the corporation is Theme Promotions, Inc.  It does business as Theme Co-Op Promotions.**

4.    John O'Keefe is the sole owner and a principal of the firm of O'Keefe & Associates. (Ex. 23 at 43.)

RESPONSE:  **Admitted.**

5.    Paul Sampson is also a principal with O'Keefe. (Id.)

RESPONSE:  **Admitted.**

6.    Gerry Gersovitz is the President and Chief Executive Officer of Theme. (Ex. 24.)

RESPONSE:  **Admitted.**

7.    Walter "Chip" Cohan was the Vice President and Sales Manager for Theme. (Ex. 24.)

RESPONSE:  **Admitted.**

8.    Chuck Sjoberg was a Vice President of Field Communications of Theme. (Ex. 24.)

RESPONSE:  **Admitted.**

9.    In the Spring of 1998, Cohan and Gersovitz approached O'Keefe about the possibility of performing executive searches for marketing and sales professionals for Theme. (Ex. 23 at 79.)

RESPONSE:  **Admitted.**


10.     The parties held a meeting in Westport, Connecticut. (Ex. 23 at 80.)

RESPONSE:  **Admitted.**


11.     The parties subsequently entered into a number of contracts for services including fully executed letter agreements dated July 29, 1998, October 9, 1998, November 13, 1998 and January 14, 1999. (Ex. 1-4.)

RESPONSE:     **Theme Co-op denies paragraph 11 as stated.  Theme Co-op admits the parties entered into various agreements between July 29, 1998 and January 4, 1999 (collectively, the "Agreements).  However, the Agreements included both oral and written representations.  _See_ O'Keefe's Exs. 1-5; _See also_ Gersovitz Aff. at ¶ 5.**


12.     The terms of these agreements were accepted by Theme and fully executed by them. (Id.)

RESPONSE:     **Theme Co-op admits that it accepted the terms of the Agreements, which included both oral and written representations.  _See_ O'Keefe's Exs. 1-5; _See also_ Gersovitz Aff. At ¶ 5.**


13.     Another agreement, dated December 23, 1998, was also received and accepted by TCP, who paid the initial invoice. (Ex. 5.)

RESPONSE:     **Admitted.**


14.     Theme also indicated to O' Keefe that they were always on the look out for qualified individuals and if O' Keefe came across individuals who might be of interest to Theme, even though not specifically related to an active job search, that O' Keefe should bring these individuals to Theme' s attention. (Ex. 6, 8, 22, 23.)

RESPONSE:    **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 14 is not based upon "evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401, and 408, O'Keefe's Exhibits 6 and 8 are inadmissible as irrelevant, offers of compromise. _See_ Ex. 6, 8. Further, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22 and 23 (the Deposition Transcripts of John O'Keefe and Paul Sampson respectively) the evidentiary basis for paragraph 14 exists.**

   **Subject to this Objection, Theme Co-op has insufficient knowledge or information and leaves O'Keefe to its proof in connection with paragraph 14.**


15.    The letter agreements signed by Theme all contained language that states "in the event that an executive is hired in connection with work performed by O' Keefe & Associates for a position different than the position described above, a full professional fee based upon the first year' s estimated cash compensation will be due for that executive(s)." (Ex. 1-5)

RESPONSE:    **Theme Co-op admits that a portion of O'Keefe's Exhibits 1-5 contain the statement "in the event that an executive is hired in connection with work performed by O' Keefe & Associates for a position different than the position described above, a full professional fee based upon the first year' s estimated cash compensation will be due for that executive(s)." _See_ O'Keefe's Exs. 1-5.**


16.    In relation to the searches performed for Theme, O' Keefe went through its basic four-step process, which includes "1. Develop a position specification which describes the basic duties and responsibilities of the position; 2. Search the field to locate executives with qualifications closely matching the specifications; 3. Interview the most qualified candidates to obtain a comprehensive understanding of their accomplishments and potential; and 4. Present the most qualified candidates to the client for evaluation." (Ex. 1-5, 22, 23.)

RESPONSE:    **Denied. _See_ Gersovitz Aff. at ¶¶ 14-41.**


17.    As a result of its efforts, O' Keefe presented a number of candidates to Theme for consideration. (Ex. 6, 19, 22-24.)

RESPONSE:     **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 17 is not based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 408, Exhibit 6 is inadmissible as an offer of compromise. _See_ Ex. 6. Further, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22, 23, and 24 (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 17 exists.**

                        **Subject to this objection, Theme Co-op admits that O'Keefe presented a number of candidates to Theme Co-op for consideration, but denies that all candidates were presented as a result of O'Keefe's efforts. _See_ Gersovitz Aff. at ¶ 32.**

18.     Theme decided which of those candidates it wanted to interview and flew them out to California for daylong interview sessions with a number of Theme personnel. (Id.)

RESPONSE:     **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 18 is not based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 408, Exhibit 6 is inadmissible as an offer of compromise. _See_ Ex. 6. Further, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22, 23, and 24 (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 18 exists.**

                        **Subject to this objection, Theme Co-op admits paragraph 18.**

19.     Ultimately, Theme hired nine (9) individuals as a result of O'Keefe's efforts:

        1.     Rob Cook;
        2.     Steve Regan;
        3.     John Sandwick;
        4.     Carey Rogers;
        5.     Lorri Rice;
        6.     Rick Banez;

7.    Crystal Hudson;
8.    Todd Nonken; and
9.    Siena Long. (Id.)

RESPONSE:    **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 19 is not based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 408, Exhibit 6 is inadmissible as an offer of compromise.  _See_ Ex. 6.  Further, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22, 23, and 24  (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 19 exists.**

   **Subject to this objection, Theme Co-op admits it hired Robert Cooke, Steve Regan, John Sandwick, Carey Rogers, Lori Rice, Rick Banez, Crystal Hudson, Todd Nonken, and Siena Long in reliance on O'Keefe's representations that they were the 'most qualified candidates" for the positions for which they were hired .  _See_ Gersovitz Aff. at ¶ 13.  Furthermore, O'Keefe did not present the following candidates to Theme Co-op:  Siena Long, Steve Regan and Lori Rice.  Long, Regan and Rice were all candidates who _Theme Co-op_ presented to O' Keefe, and then presumed that O' Keefe would interview and then perform, testing, reference checks, and verification of background information.  Theme Co-op further understood that O' Keefe would present these candidates back to Theme Co-op only if the candidates were found to be qualified.  _See_ Gersovitz Aff. at ¶ 32.**

   20.    A tenth candidate, Kevin Mulrain, was presented by O' Keefe to Theme for a National Accounts Manager position in 1998. (Ex. 6-8, 16, 21-24.)

RESPONSE:    **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 20 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial", nor is it based upon 'evidence that would be admissible at trial."  As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 408, Exhibits 6-8 are inadmissible as irrelevant offers of compromise.  Additionally, pursuant to Fed. R. Evid. 401 and 801, O'Keefe's Exhibit 21 is inadmissible as irrelevant hearsay.  Further, O'Keefe fails to identify with any specificity where**

**within O'Keefe's Exhibits 22, 23, and 24  (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 20 exists.**

**Subject to this objection, Theme Co-op admits paragraph 20.**

21.    Ultimately, Mulrain decided he was not interested in working for Theme and another candidate was selected at the time. (Ex. 22-24.)

RESPONSE:    **Objection.  In violation of L. Civ. R. 56(a)(3), O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22, 23, and 24  (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 21 exists.**

**Subject to this objection, Theme Co-op admits paragraph 21.**

22.    O'  Keefe, however, learned that approximately one year later Mulrain was hired by Theme for an Account Manager position. (Ex. 22-23.)

RESPONSE:    **Objection.  In violation of L. Civ. R. 56(a)(3), O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22 and/or 23 (the Deposition Transcripts of John O'Keefe and Paul Sampson, respectively) the evidentiary basis for paragraph 22 exists**

**Subject to this objection, Theme Co-op admits that it hired Mulrain through the recruiting efforts of another executive search firm Johnson and Company.  Theme Co-op paid a $20,000 fee to Johnson and Company because Johnson and Company recruited Mulrain for employment with Theme Co-op on or about January 30, 2000. _See_ Gersovitz Aff. at ¶¶ 33, 34.**

**Theme Co-op has insufficient knowledge or information and leaves O'Keefe to its proof in connection with the portion of paragraph 22 that alleges what O'  Keefe learned.**

23.     All ten individuals were hired by Theme and began employment between November 9, 1998 and January 24, 2000. (Ex. 6-24.)

RESPONSE:     **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 23 is not based upon "an affidavit of a witness competent to testify as to the facts at trial," nor is it based upon "evidence that would be admissible at trial."  As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 408, O'Keefe's Exhibits 6-9 are inadmissible as irrelevant offers of compromise.  _See_ O'Keefe's Exs. 6-9.  Additionally pursuant to Fed. R. Evid. 401 and 801, O'Keefe's Exhibits 20 and 21 are inadmissible hearsay.  Furthermore, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22, 23, and 24  (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 23 exists.**

               **Subject to this objection, Theme Co-op admits that Theme Co-op hired ten individuals who began employment between November 9, 1998 and January 30, 2000.  _See_ Gersovitz Aff. at ¶ 42.**

24.     The Agreements between the parties all stated that final payments to O'Keefe would be made upon completion of the search. (Ex. 1-5.)

RESPONSE:     **Theme Co-op denies paragraph 24 as stated.  However, Theme Co-op admits that a portion of O'Keefe's Exhibits 1-5 state that 50% of the initial fees due to O'Keefe will be due upon contact signing and 50% will be due upon the completion of the search.  _See_ O'Keefe's Exs. 1-5.**

25.     All the above searches were, in fact, completed and candidates presented by O'Keefe were hired by Theme for all the positions. Despite that fact, Theme did not make timely payment on the balance owed. (Ex. 6, 8, 22-24.)

RESPONSE:     **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 25 is not based upon "an affidavit of a witness competent to testify as to the facts at trial," nor is it based upon "evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 408,**

8

**O'Keefe's Exhibits 6 and 8 are inadmissible as irrelevant offers of compromise. _See_ O'Keefe's Exs. 6 and 8. Furthermore, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22, 23, and 24 (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 25 exists.**

**Subject to this objection, Theme Co-op denies paragraph 25. _See_ Gersovitz Aff. at ¶¶ 14-41.**

26.    On or about November 29, 1998, O'Keefe sent correspondence to Theme dealing with outstanding invoices. (Ex. 6.)

RESPONSE:    **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 26 is not based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 408, O'Keefe's Exhibit 6 is inadmissible as irrelevant offers of compromise. _See_ O'Keefe's Ex. 6.**

**Subject to this objection, Theme Co-op admits that it received a letter dated November 29, 1998 from O'Keefe.**

27.    On December 13, 1998, Theme responded with correspondence directed to O'Keefe. (Ex. 7.)

RESPONSE:    **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 27 is not based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 408, O'Keefe's Exhibit 7 is inadmissible as irrelevant offers of compromise. _See_ O'Keefe's Ex. 7.**

**Subject to this objection, Theme Co-op admits that it sent a letter dated December 13, 1998 to O'Keefe.**

28.    On October 14, 1999, O'Keefe sent correspondence responding Theme's December 13, 1998 correspondence. (Ex. 8.)

RESPONSE:   **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 28 is not based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 408, O'Keefe's Exhibit 8 is inadmissible as irrelevant offers of compromise. *See* O'Keefe's Ex. 8.**

        **Subject to this objection, Theme Co-op admits that it received a letter dated October 14, 1998 from O'Keefe.**

29.    In one last attempt to resolve the situation, O'Keefe's counsel sent correspondence to Gerry Gersovitz at Theme dated February 22, 2000. (Ex. 9.)

RESPONSE:   **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 29 is not based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 408, O'Keefe's Exhibit 9 is inadmissible as irrelevant offers of compromise. *See* O'Keefe's Ex. 9.**

        **Subject to this objection, Theme Co-op admits that it received a letter dated February 22, 2000 from O'Keefe's counsel.**

30.    When no response was received, Plaintiff instituted the instant action.

RESPONSE:   **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 30 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial," nor is it based upon 'evidence that would be admissible at trial."**

        **Subject to this objection, Theme Co-op has insufficient knowledge or information and leaves O'Keefe to its proof in connection with paragraph 30 as stated.**

31.    With the exception of Todd Nonken, all ten employees introduced to Theme by O'Keefe were employed by Theme for a period in excess of six months. (Ex. 6-8, 10-19, 22-24.)

RESPONSE:  **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 31 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial,' nor is it based upon 'evidence that would be admissible at trial.'  As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 408, O'Keefe's Exhibits 6-8 are inadmissible as irrelevant offers of compromise.  _See_ O'Keefe's Exs. 6-8.  Furthermore, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22, 23, and 24  (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 31 exists.**

**Subject to this objection, Theme Co-op admits that with the exception of Todd Nonken, Theme Co-op employed the following employees in excess of six months: Steve Regan, John Sandwick, Robert Cook, Crystal Hudson, Rick Banez, Lori Rice, Cary Rogers, Siena Long and Kevin Mulrain.  Theme Co-op denies that O'Keefe introduced all ten employees to Theme Co-op.  _See_ Gersovitz Aff. at ¶¶ 32, 33, 34.**

32.     The Agreements between the parties provided for O'Keefe to redo the search at a reduced fee in the event a candidate was employed less than six months. (Ex. 1-5.)

RESPONSE:  **Theme Co-op denies paragraph 32 as stated.  Theme Co-op admits that a portion of O'Keefe's Exhibits 1-5 contain the statement '[i ]n the event that a candidate is hired and then leaves [Theme Co-op] we offer the following guarantee:  In the first 90 days, we will re-do the search at no additional fee… from 91 to 180 days, we will re-do the search for 50% of our fee.'  _See_ O'Keefe's Exs. 1-5.**

33.     There was no provision in any of the Agreements for any refund or other services due from O'Keefe for an employee employed greater than six months. (Ex. 1-5).

RESPONSE:  **Theme Co-op admits that the letter agreements attached as O'Keefe's Exhibits 1-5 do not provide for a refund or other services for an employee employed greater than six months.  _See_ O'Keefe's Exs. 1-5.**

34.     The various candidates' dates of hire and separation of employment are as follows:

| CANDIDATE | HIRE DATE | DATE LEFT TCP |
|---|---|---|
| Steve Regan | 11/09/98 | 9/1/99 |
| John Sandwick | 11/09/98 | |
| Robert Cook | 11/24/98 | 6/15/99 |
| Crystal Hudson | 07/18/99 | 4/30/01 |
| Rick Banez | 05/24/99 | 12/02 / 1/03 |
| Todd Nonken | 07/30/99 | 12/9/99 |
| Lori Rice | 08/02/99 | |
| Cary Rogers | 08/30/99 | 2002 |
| Siena Long | 01/24/00 | 4/25/01 |
| Kevin Mulrain | 01/03/00 | 4/25/01 |

(Ex. 6-8, 10-19, 22-24.)

RESPONSE:   **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 34 is not based upon "an affidavit of a witness competent to testify as to the facts at trial," nor is it based upon "evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 408, O'Keefe's Exhibits 6-8 are inadmissible as irrelevant offers of compromise.  _See_ O'Keefe's Exs. 6-8.  Furthermore, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22, 23, and 24  (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 31 exists.**

**However, subject to this objection, Theme Co-op admits that the dates of employment of for the candidates listed below is stated as follows:**

| CANDIDATE | HIRE DATE | DATE LEFT TCP |
|---|---|---|
| **Steve Regan** | **11/09/98** | **9/1/99** |
| **John Sandwick** | **11/09/98** | **1/15/03** |
| **Robert Cooke** | **11/24/98** | **6/15/99** |
| **Crystal Hudson** | **01/18/99** | **4/30/01** |
| **Rick Banez** | **05/24/99** | **2/14/03** |

| | | |
|---|---|---|
| **Todd Nonken** | **07/30/99** | **12/9/99** |
| **Lori Rice** | **08/29/99** | **to present** |
| **Cary Rogers** | **08/30/99** | **6/21/02** |
| **Siena Long** | **01/24/00** | **4/25/01** |
| **Kevin Mulrain** | **01/30/00** | **4/30/01** |

*See* **Gersovitz Aff. at ¶ 42.**

35.    Steve Regan was hired as a National Accounts Manager in the East and began employment on November 9, 1998. His starting annual compensation was $112,000. (Ex. 18.)

RESPONSE:    **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 35 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial, nor is it based upon 'evidence that would be admissible at trial." O'Keefe's Exhibit 18 does not contain any evidence to support the facts stated in paragraph 35.  *See* Ex. 18.**

                          **Subject to this objection, Theme Co-op admits paragraph 35.**

36.    Regan resigned on September 1, 1999, approximately 10 months after he began. Gersovitz stated that his performance was "fair" and that he left because he "didn' t feel he was going to be able to earn what he wanted to earn and had some other opportunities." (Ex. 18, Ex. 24 at 162.)

RESPONSE:    **Theme Co-op denies paragraph 36 as stated.  Theme Co-op denies that 'Regan resigned on September 1, 1999, approximately 10 months after he began."  *See* O'Keefe's Ex. 24 at page 62.  Theme Co-op admits that Gersovitz testified at his March 2003 deposition that Regan left Theme Co-op after eight months and three weeks and that his performance was 'fair."  *See* O'Keefe's Ex. 24 at 162.  Theme Co-op admits that Gersovitz testified at his March 2003 deposition that he thought that Regan 'was feeling that he wasn't going to be able to earn the money that he wanted to earn, that he wasn't going to be able to deliver the sales.  So [Gersovitz] thought [Regan] had some other opportunities."  *See* O'Keefe's Ex. 24 at 162.**

37.     Paul Sampson had discussions with Theme Co-Op representatives regarding Rob Cook and Steve Regan working on the East Coast regarding their compensation plan and salary structure. Cook and Regan reported that they were hearing that there had been a long history of things not going well on the East Coast for Theme Co-Op and almost all of their potential clients had issues with Theme. Because of this, they were having a difficult time making sales. As a result of this, Sampson was involved in discussions with Theme about potential changes to the Cook and Regan salary structure in order to keep them as employees and allow them to be successful. However, before those changes could be finalized, both Cook and Regan resigned their positions. (Ex. 23 at 144.)

RESPONSE**:  Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 37 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial,"nor is it based upon 'evidence that would be admissible at trial." Pursuant to Fed. R. Evid. 801, O'Keefe's Exhibit 23 at page 144 are Paul Sampson's inadmissible hearsay statements.  _See_ O'Keefe's Ex. 23 at 144.**

38.     John Sandwick was hired on November 9, 1998 at a starting annual compensation of $100,000. On September 1, 1999, he was promoted to Group Vice President and received an increase in compensation to $125,000. On November 1, 2001, his income was increased to $175,000. (Ex. 10.)

RESPONSE:     **Theme Co-op denies paragraph 38 as stated.  Theme Co-op admits that Theme Co-op hired John Sandwick on November 9, 1998 at a starting annual compensation of $100,000 and promoted Sandwick to Vice President Sales Manager on September 1, 1999.  _See_ O'Keefe's Ex. 10.  Theme Co-op admits that Sandwick requested and received an increase to draw at $125,000 on October 1, 1999.  _See_ O'Keefe's Ex. 10. Further Theme Co-op admits that Theme Co-op increased Sandwick's pay to $175,000 on January 1, 2001 as a result of a new compensation plan.  _See_ O'Keefe's Ex. 10.  Theme Co-op further admits that Sandwick's pay was reduced to $148,750 on May 16, 2001 in a 15% TCP pay reduction.  _See_ O'Keefe's Ex. 10.  Theme Co-op denies the remainder of paragraph 38 as stated.  _See_ O'Keefe's Ex. 10.**

39.     Because Sandwick was promoted to a Vice President position within one year of his start date, O' Keefe was paid an additional fee of $30,000. John Sandwick was a "slam dunk", an outstanding candidate who had a strong interest in the position and the perfect background. (Ex. 23 at 114.) He had an outstanding profile and was one of the best candidates Sampson has ever interviewed for a job like

this. (Ex. 23 at 147.) As evidenced by his promotions and increases in compensation, Sandwick was very successful in his employment with Theme. (Ex. 24 at 119, 126, 127; Ex. 22 at 105-111.)

RESPONSE:     **Theme Co-op admits the first sentence of paragraph 39.**

**Theme Co-op denies the second sentence of paragraph 39 as stated.  Theme Co-op denies John Sandwick was a "slam dunk", an outstanding candidate who had a strong interest in the position and the perfect background.  _See_ Exs. C-D; _see also_ Gersovitz Aff. at ¶¶ 24, 39.  However, Theme Co-op admits that _Sampson testified_ at his March 2003 Deposition that John Sandwick was 'a slam-dunk," and that Sandwick was an 'outstanding candidate had a strong interest in the position. Perfect background".  _See_ O'Keefe's Ex. 23 at page 114.**

**Theme Co-op denies the third sentence of paragraph 39 as stated.  Theme Co-op denies John Sandwick had an outstanding profile.  _See_ Exs. C-D.  Theme Co-op has insufficient knowledge or information and leaves O'Keefe to its proof in connection with whether Sandwick was one of the best candidates Sampson has ever interviewed for a job like this.  However, Theme Co-op admits that _Sampson testified_ at his March 2003 deposition that Sandwick had an '[o]utstanding profile, one of the best candidates [Sampson] ever interviewed for a job like this."  _See_ O'Keefe's Ex. 23 at 148.**

**Theme Co-op denies the fourth sentence of paragraph 39.  _See_ O'Keefe's Ex. 24 at 119, 126, 127; Ex. 22 at 105-111; _see also_ Gersovitz Aff. at ¶ 39.**

40.     Gersovitz testified that John Sandwick began working Theme on November 9, 1998. He was promoted to Group Vice President on or about September 1, 1999. On January 1, 2001, his compensation was increased from $100,000 per year to $175,000 per year, indicating that he was performing well. (Ex. 24 at 119-120, 127.)

RESPONSE:     **Theme Co-op admits the first sentence of paragraph 40.  Theme Co-op admits that Gersovitz testified that Sandwick was promoted to a 'group VP position" and received a 'modest salary increase."  _See_ O'Keefe's Ex. 24 at 119.  Theme Co-op admits that Gersovitz testified that if Sandwick was hired in November 1998 and he was promoted to a Vice President position in September 1999 it would indicate that**

15

**Sandwick was performing 'pretty well,' but his performance started to 'flounder' approximately two months later." _See_ O'Keefe's Ex. 24 at 119. Further, Theme Co-op admits that although Gersovitz testified that Sandwick's pay increase from $100,000 to $175,000, thirteen months after Sandwick was hired indicated that he was doing 'pretty well,' Gersovitz also testified that Sandwick 'may have been given that increase when he was brought on board in November, told that it would be effective January 1…" _See_ O'Keefe's Ex. 24 at 120.**

41.    Robert Cook was hired as a National Accounts Manager on November 24, 1998 working in the East at an initial compensation of $100,000. (Ex. 17.)

RESPONSE**: Objection. In violation of L. Civ. R. 56(a)(3) paragraph 42 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial, nor is it based upon 'evidence that would be admissible at trial." At the outset, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibit 17 the evidentiary basis for paragraph 41 exists. Moreover, as more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 801, O'Keefe's Exhibit 17 is inadmissible hearsay. _See_ O'Keefe's Ex. 17**.

42.    Cook reported that he was "shocked that Coke was no longer part of the picture" and that he felt that the compensation plan presented by Theme was too risky. Cook also suffered because Theme's reputation among potential clients on the East Coast had been hampered by previous relationships. Cook also reported that "there must be something seriously wrong because Steve Regan, Janine Salveson and myself could not make a sale within the first six months." He also expressed surprise that there was no 401K plan in place. (Ex. 17.)

RESPONSE:    **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 42 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial, nor is it based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 801, O'Keefe's Exhibit 17 is inadmissible hearsay. _See_ O'Keefe's Ex. 17**.

43.    Rob Cook resigned his position on June 15, 1999, more than six months after he began. Chip Cohan expressed displeasure with Cook's results to date but not necessarily with his performance. (Ex. 17, Ex. 23 at 167.)

RESPONSE:  **Theme Co-op admits the first sentence of paragraph 43.**

**Theme Co-op objects to the second sentence of paragraph 43. In violation of L. Civ. R. 56(a)(3) the second sentence of paragraph 43 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial, nor is it based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 801, the evidence O'Keefe utilized to support of this statement is inadmissible hearsay.  _See_ O'Keefe's Ex. 17.**

**Subject to this objection, Theme Co-op has insufficient knowledge or information and leaves O'Keefe to its proof in connection with the second sentence of paragraph 43.**

44.    Janine Salveson, another National Accounts Manager hired directly by Theme without any involvement on the part of O'Keefe & Associates, reported similar concerns to Cook and Regan and also resigned her position. (Ex. 20.)

RESPONSE:  **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 44 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial, nor is it based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 801, O'Keefe's Exhibit 20 is irrelevant and inadmissible hearsay.  _See_ O'Keefe's Ex. 20.**

45.    Crystal Hudson began employment on January 18, 1999 with an initial compensation of $82,000. On July 18, 1999, based on Sjoberg's recommendation that she was doing a "great job", she received a $1,000 gift check for her positive performance. On January 18, 2000, at her annual review, her compensation was increased by 10% to $90,200. At her second annual review on January 18, 2001, her salary was increased by almost 10% to $99,000. Hudson's performance evaluations at TCP indicate positive performance. (Ex. 14.)

RESPONSE**:  Theme Co-op admits the first sentence of paragraph 45.  O'Keefe's Ex. 14. Theme denies the second sentence of paragraph 45 as stated.  Rather, Theme Co-op admits that based upon Sjoberg's recommendation, Hudson received an interim bonus of $1000 on or about July 18, 1999 to keep Hudson 'pumped up." Id.  Theme Co-op admits Theme Co-op raised Hudson's salary to $90,200 on or about January 18, 2000 and raised her salary to $99,000 on or about January 18, 2001. Id.  Theme Co-op admits the fifth sentence of paragraph 45.**

46.    Crystal Hudson was laid off as a result of company wide cut backs, which included non-O' Keefe personnel, on or about April 30, 2001. (Ex. 14, Ex. 24.)

RESPONSE**:  Theme Co-op denies paragraph 46 as stated.  Theme Co-op admits that it terminated Crystal Hudson's employment on or about April 30, 2001 due to cutbacks _and questions about her performance_.  See O'Keefe's Ex. 24 at page 112.**

47.    Chuck Sjoberg indicated to John O' Keefe at the F&l Conference in May of 2001 that he was terribly unhappy that he had to let Crystal Hudson go because of business reasons. Crystal Hudson, herself, indicated to O' Keefe that she was blindsided by her termination as she was led to believe that she was doing very well and felt overall that she got a "raw deal". (Ex. 22 at 142.)

RESPONSE:    **Theme Co-op has insufficient knowledge or information and leaves O'Keefe to its proof in connection with the first sentence of paragraph 47.  Theme Co-op objects to the second sentence of paragraph 47.  In violation of L. Civ. R. 56(a)(3) the second sentence of paragraph 47 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial, nor is it based upon 'evidence that would be admissible at trial." Pursuant to Fed. R. Evid.  801, O'Keefe's Ex. 22 at page 142 is inadmissible hearsay.  _See_ O'Keefe's Ex. 22 at page 142**.

48.    Gersovitz testified that Crystal Hudson was laid off on April 30, 2001 as part of a company wide reduction in force. This reduction in force affected employees not hired through O' Keefe. Other employees who maintained their employment with Theme or at a certain salary level were asked to accept a 15% cut in compensation. (Ex. 24 at 111, 112.)

RESPONSE:    **Theme Co-op denies the first sentence of paragraph 48 as stated.  Theme Co-op admits that it terminated Crystal Hudson's employment on or about April 30, 2001 due to cutbacks _and questions about her performance_.  _See_ O'Keefe's Ex.  24 at page 112.  Theme Co-op admits the second and third sentences of paragraph 48.**

49.    Rick Banez began employment on May 24, 1999 as Field Communications Manager at a starting annual salary of $89,000. He received an increase to $93,400 on November 24, 1999. On May 26, 2000, he received an increase to $99,000. (Ex. 13.)

RESPONSE**:    Theme Co-op denies Paragraph 49 to the extent that Rick Banez received an increase to $93,000 on November 24, 1999.  _See_ O'Keefe's Ex. 13.  Theme Co-op admits the remaining statements of Paragraph 49.**

50.    On January 29, 2001, Banez was promoted to Director of Field Communications and received an increase to $115,000 per year. Gersovitz concedes that he was a "good performer". (Ex. 13, Ex. 24 at 129, 130). Rick Banez resigned in December of 2002 or January 2003 in order to take advantage of a "good opportunity at another company." (Ex. 24 at 49.)

RESPONSE:    **Admitted.**

51.    Rick Banez was hired for Chuck Sjoberg's Field Communications group. "Chuck (Sjoberg) was looking for only all-stars so he saw quite a few candidates but he was holding out for the best." (Ex. 23 at 222.) Gersovitz testified at his deposition that Rick Banez was a good employee for Theme and was promoted to Director of Field Communications on or about January 29, 2001. Theme is not aware of any reason that O' Keefe would not be entitled to its full fee with regard to the hiring of Rick Banez. (Ex. 24 at 40, 129-130.)

RESPONSE:    **Theme Co-op admits the first sentence of paragraph 51.**

**Theme Co-op objects to the second sentence of paragraph 51 as stated.  In violation of L. Civ. R. 56(a)(3) this statement is not based upon 'an affidavit of a witness competent to testify as to the facts at trial', nor is it based upon 'evidence that**

would be admissible at trial." Pursuant to Fed. R. Evid. 801,O'Keefe's Ex. 23 at 222 is inadmissible hearsay. *See* O'Keefe's Ex. 23 at page 222.

Theme Co-op admits the third sentence of paragraph 51.

Theme Co-op denies the fourth sentence of paragraph 51. Theme Co-op admits that on March 6, 2003, Gersovitz testified that he was not aware of any reason that O'Keefe would not be entitled to its full fee with regard to the hiring of Banez. However, <u>subsequent</u> to the deposition of Gerry Gersovitz, Paul Sampson revealed that O'Keefe had engaged in a fraudulent scheme to conceal negative test results from Theme Co-op. At no time did O'Keefe inform Theme Co-op that the testing results of Rick Banez indicated that his "energy level [was] slightly below average." *See* Gersovitz Aff. at ¶ 27. Additionally, O'Keefe has provided no proof that it checked references for Banez (*see* Gersovitz Aff. at ¶ 28), and O'Keefe has admitted that it never verified any of the candidates' employment histories. Sampson Dep. at p. 53.

52.    Todd Nonken began employment on July 30, 1999 as Director of Marketing and Proposal Development at an initial compensation level of $175,000. (Ex. 19.)

RESPONSE: **Admitted.**

53.    Nonken reported directly to Gerry Gersovitz who couldn't recall any immediate plans to terminate Nonken. (Ex. 24 at 166.)

RESPONSE: **Theme Co-op denies paragraph 53 as stated. Theme Co-op admits Gersovitz was Nonken's immediate supervisor. Further, although Gersovitz did testify that he could not recall any immediate plans to terminate Nonken, he also testified:**

**"Q...Did you have any plans to terminate Mr. Nonken.
A...Well, I think there was concerns about his performance."**

**O'Keefe's Ex. 24 at page 166.**

54.    Nonken reported to O' Keefe that he was not happy right from the start with Theme's management style, lack of support and also thought that he had been misled as to the duties and responsibilities of the position and felt that given the level of autonomy that had been represented. Nonken also asked O' Keefe not to reveal this to Theme as he felt he would be terminated if he complained. (Ex. 22 at 147.)

RESPONSE:    **Objection. In violation of L. Civ. R. 56(a)(3) this statement is not based upon 'an affidavit of a witness competent to testify as to the facts at trial, nor is it based upon 'evidence that would be admissible at trial." Pursuant to Fed. R. Evid. 801, O'Keefe's Exhibit 22 at page 147 is inadmissible hearsay. <u>See</u> O'Keefe's Ex. 22 at page 147.**

55.    Lori Rice began employment on August 2, 1999 as Field Communications Manager in the mid-West. Gersovitz conceded that she was a "very good performer". (Ex. 24 at 129.) Gersovitz also concedes that Lori Rice has "done well" for Theme. (Ex. 24 at 67.) Gersovitz testified that Lori Rice has done well in her position with Theme and she is a very good performer. (Ex. 24 at 68, 129.)

RESPONSE:    **Theme Co-op admits that Gersovitz testified that Lori Rice has 'done well' in her position and she was a 'very good' performer. <u>See</u> O'Keefe's Ex. 24 at 68, 129. Theme Co-op objects to the remaining statements in paragraph 55. In violation of L. Civ. R. 56(a)(3) O'Keefe's Exhibit 24 does not contain any evidence to support the remaining stated in paragraph 56.**

**Subject to this objection, Theme Co-op admits the first sentence of paragraph 55, but denies that Rice began employment on August 2, 1999. Rice's hire date was August 29, 1999. <u>See</u> Gersovitz Aff. at ¶ 42.**

56.    Carey Rogers was hired on August 30, 1999 as a National Account Director in the mid-West. On May 1, 2001, he was promoted to Group Vice President of Sales. His starting salary of $100,000 was increased to $150,000 on January 1, 2001 and $175,000 on May 1, 2001. Carey Rogers' performance evaluation for Theme indicated that he was a "great addition". Rogers ultimately resigned in 2002. (Ex. 11, Ex. 24 at 120-122.)

RESPONSE:   **Theme Co-op admits the first, second and third sentences of paragraph 56. Theme Co-op denies the fourth sentence of paragraph 56 as stated. Theme Co-op indicated to Rogers that if he did not resign there would be a likelihood he would be terminated. _See_ O'Keefe's Ex. 24 at page 50.**

57.     The resume received from Carey Rogers by O'Keefe was forwarded by Theme to another recruiter, Johnson & Co., in the Summer of 1999 as an example of an ideal candidate for the position. On June 25, 1999, Walter "Chip" Cohan of Theme faxed a copy of Carey Rogers' resume to Stanley Johnson, senior partner at Johnson & Co. with a handwritten note stating "I will be interviewing this person in Chicago next week. Good profile example." (Ex. 21.)

RESPONSE:   **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 57 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial", nor is it based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401 and 801, O'Keefe's Exhibit 21 is inadmissible as irrelevant, and hearsay. _See_ O'Keefe's Ex. 21.**

58.     Theme assured Johnson & Co. that they had severed all ties and relationships with any other executive search firms. Theme's representations to Johnson & Co. were not true as it continued to maintain a relationship with O'Keefe & Associates. (Ex. 21.)

RESPONSE:   **Objection. In violation of L. Civ. R. 56(a)(3) paragraph 58 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial, nor is it based upon 'evidence that would be admissible at trial." As more fully stated in Theme Co-op's Accompanying Motion to Strike, pursuant to Fed. R. Evid. 401, and 801 O'Keefe's Exhibit 21 is inadmissible as irrelevant, and hearsay. _See_ O'Keefe's Ex. 21.**

59.     Siena Long was hired on January 24, 2000 as Director of Business Development at a starting salary of $250,000. On February 14, 2000, her responsibilities were increased to Director of Business Development and Marketing. On April 19, 2000, she was promoted to Vice President, Business Development and Marketing and received a $5,000 bonus. On December 4, 2000, she received an increase to $255,000 along with a $10,000 year-end bonus. (Ex. 15.)

RESPONSE:   **Theme Co-op denies Siena Long received a $10,000 year-end bonus on December 4, 2000.  _See_ O'Keefe Ex. 15.  Theme Co-op admits the remainder of paragraph 59.**

60.     On April 25, 2001, at the same time that other employees were being laid off or being asked to accept reductions in compensation due to Theme's business difficulties, Siena Long resigned her position. (Ex. 15, Ex. 24.)

RESPONSE:   **Denied.  _See_ O'Keefe's Ex. 24 at p. 145.**

61.     Kevin Mulrain was presented by O'Keefe to Theme as a candidate for a National Account Director position in the East in approximately August of 1998. Mulrain ultimately determined that he was not interested in the position at that time. Mulrain thereafter began employment with Theme on January 3, 2000 as a Director of National Accounts in the East. (Ex. 16, 22-24.)

RESPONSE:   **Objection.  In violation of L. Civ. R. 56(a)(3) paragraph 61 is not based upon 'an affidavit of a witness competent to testify as to the facts at trial, nor is it based upon 'evidence that would be admissible at trial." O'Keefe's Exhibit 16 does not contain any evidence to support the facts stated in paragraph 35.  _See_ Ex. 16.  Furthermore, O'Keefe fails to identify with any specificity where within O'Keefe's Exhibits 22, 23, and 24  (the Deposition Transcripts of John O'Keefe, Paul Sampson and Gerry Gersovitz, respectively) the evidentiary basis for paragraph 61 exists.**

**Subject to this objection, Theme Co-op admits paragraph 61.**

62.     Although Gersovitz testified that Mulrain was a "not very good performer", his record would indicate otherwise. (Ex. 16, Ex. 24 at 150.) At his one-year anniversary, Mulrain's compensation was increased by 36% to $150,000. He also received positive performance reviews while employed by Theme. (Ex. 16.)

RESPONSE:   **Theme Co-op denies paragraph 62 as stated.  Theme Co-op admits that Gersovitz testified that Mulrain was 'not [a] very good performer."  _See_ O'Keefe's Ex. 24 at 150.  Theme Co-op denies that Mulrain's record indicates that he was a good**

**performer.  _See_ O'Keefe's Ex. 24 at 151.  Theme Co-op admits that at times he received positive performance reviews while in Theme Co-op's employ.  _See_ O'Keefe's Ex. 16.**

     63.    Mulrain was also terminated as a result of the reduction in force on April 30, 2001. (Ex. 16, Ex. 24.)

RESPONSE:   **Theme Co-op denies paragraph 63 as stated.  Theme Co-op admits that it terminated Mulrain's employment on or about April 30, 2001 due to cutbacks _and his performance issues_.  _See_ O'Keefe's Ex. 24 at 115.**

**II.     Material Facts As To Which There Are Genuine Issues to be Tried.**

1.     Theme Co-op and O'Keefe entered into various agreements between July 29, 1998 and January 4, 1999 (collectively, the "Agreements"). <u>See</u> O'Keefe's Exhibits submitted in conjunction with its Motion for Summary Judgment and/or Dismissal dated November 29, 2004 (collectively "O'Keefe's Ex.") Exs. 1-5. <u>See</u> <u>also</u> Gersovitz Aff. at ¶ 4.

2.     The Agreements included both oral and written representations. <u>See</u> Gersovitz Aff. at ¶ 5.

3.     Theme Co-op retained O'Keefe to conduct a nationwide search to locate individuals for employment with Theme Co-op in accordance with the Agreements. <u>See</u> Gersovitz Aff. at ¶ 6.

4.     The Agreements obligated O'Keefe to:

  (1)  Develop a Position Specification which describes the basic duties and
       responsibilities of the position;
  (2)  Search the field to locate executives with qualifications closely matching the
       specifications;
  (3)  Interview the most qualified candidates to obtain a comprehensive understanding
       of their accomplishments and potential; and
  (4)  Present the most qualified candidates to the client for evaluation.

<u>See</u> O'Keefe's Exs. 1-5.

5.     Provided that O'Keefe complied with each of these obligations, the Agreements obligated Theme Co-op to pay commissions to O'Keefe. <u>See</u> O'Keefe's Exs. 1-5.

6.      In an effort to court Theme Co-op's business, O'Keefe emphasized its unique ability to present the most qualified candidates because of its personality testing. *See* Gersovitz Aff. at ¶ 9.

7.      This sales pitch was an essential factor in Theme Co-op's decision to enter into the contractual relationship with O'Keefe. *See* Gersovitz Aff. at ¶ 10.

8.      At the time the parties entered into the Agreements, O'Keefe and Theme Co-op reached an understanding that to carry out its responsibilities under the Agreements, O' Keefe would be obligated to: (1) conduct personality testing on candidates, in order to gauge the candidates' character traits and ability to perform certain tasks; (2) report the testing results to Theme Co-op through "personal appraisal reports" or profiles of the candidates, (3) conduct reference checks, and (4) verify the candidates' employment histories. *See* Sampson Deposition Transcript dated March 11, 2003 'Sampson Dep." at pp.56, 58, 83 –84; 93 –95; 113; *See* *also* Gersovitz Aff. at ¶ 11.

9.      Between November 9, 1998 and January 24, 2000, relying on O'Keefe's recommendations, Theme Co-op hired a number of the candidates and paid $220,000 in commissions to O'Keefe. *See* Gersovitz Aff. at ¶ 12.

10.     Theme Co-op hired Robert Cooke, Steve Regan, John Sandwick, Carey Rogers, Lori Rice, Rick Banez, Crystal Hudson, Todd Nonken, and Siena Long in reliance on O'Keefe's representations that they were the 'most qualified candidates" for the positions for which they were hired. *See* Gersovitz Aff. at ¶ 13.

11.     O' Keefe failed to perform the services required under Agreements because it did not present the "most qualified candidates" to Theme Co-op . *See* Gersovitz Aff. at ¶ 14.

12.     In violation of the Agreements O'Keefe : (1) failed to test the candidates; (2) fraudulently concealed from Theme Co-op, and blatantly mischaracterized the negative testing results of those candidates it did test; (3) failed to conduct reference checks; and (4) neglected to verify the candidates' employment histories. *See* Gersovitz Aff. at ¶ 15.

13.     During the discovery process in this case, Theme Co-op uncovered O' Keefe' s fraudulent scheme. *See* Gersovitz Aff. at ¶ 16.

14.     In many instances where O'Keefe conducted the personality testing that "sold" Theme Co-op on its services, O'Keefe hid any negative results from Theme Co-op or fabricated the results, misleading Theme Co-op into believing the candidates were the "most qualified" for the positions for which they were presented. *See* Gersovitz Aff. at ¶ 17.

15.     At his deposition, Paul Sampson disclosed for the first time that the testing results appeared  on internal O'Keefe documents entitled "Confidential " memorandum. *See* Gersovitz Aff. at ¶ 18; *See also* Theme Co-op' Exs. B, D, F, H, and J.

16.     O' Keefe failed to disclose any of the Confidential memoranda, and instead provided to Theme Co-op personal appraisal reports, in which all negative test results were omitted. *See* Gersovitz Aff. at ¶ 19; *See also*  Theme Co-op' Exs. A, C, E, G, and I.

17.     In making its hiring recommendations, O'Keefe assured Theme Co-op as to the outstanding personality traits of the candidates, and in the personal appraisal reports presented to Theme Co-op only the rosiest portraits of each candidate's abilities. _See_ Gersovitz Aff. at ¶ 20; _See also_ Theme Co-op's Exs. A, C, E, G, and I.

18.     If O'Keefe had disclosed to Theme Co-op the actual testing results -- which often contained negative information showing the candidates to be unqualified for the positions for which they were being considered -- Theme Co-op never would have hired these candidates.  _See_ Gersovitz Aff. at ¶ 21.

19.     In his deposition, Paul Sampson, a principal of O'Keefe, admitted that as a matter of general course, to the extent O'Keefe was aware of negative traits resulting from its tests, O'Keefe would disclose those traits to the client so that it had "complete information."  _See_ Sampson Dep. at p. 125.

20.     However, in virtually every instance that O'Keefe presented a candidate's testing results to Theme Co-op, O'Keefe intentionally disclosed only the positive testing results and hid the negative testing results. _See_ Gersovitz Aff. at ¶ 22; _See also_ Theme Co-op's Exs. A-J.

21.     In the case of Todd Nonken, O'Keefe blatantly fabricated the testing results.  _See_ Sampson Dep. at pp. 263, 265; _See also_ Theme Co-op's Exs. G, H.

22.     Pursuant to the July 29, 1998 agreement, O'Keefe agreed to '[p]resent the most qualified candidates to [Theme Co-op]" for three positions as National Accounts Managers. _See_ O'Keefe's Ex. 1; _See_ _also_ Sampson Dep. at pp. 91-92.

23.     During his March 2003 deposition, Sampson acknowledged that strategic skills and attention to detail are essential for this position. _See_ Sampson Dep. at pp. 88; 137-38; 141. However, O'Keefe inexplicably presented candidates for these positions, Steve Regan, John Sandwick and Robert Cooke, whose test results indicated that each of these candidates was *"not strategic.*" Further, Regan' s test results indicated that he was "*not detail oriented,*" and Sandwick' s test results indicated that he was "*light on details."* _See_ Theme Co-op's Exs. B, D, F (emphasis added).

24.     O'Keefe did not disclose any of these facts when it submitted to Theme Co-op Personal Appraisal Reports for Regan, Sandwick or Cooke. _See_ Theme Co-op's Exs. A,C,E; _See_ _also_ Sampson Dep. at p. 138; _See_ _also_ Gersovitz Aff. at ¶¶ 23, 24, 25.

25.     At no time did O'Keefe inform Theme Co-op th at the testing results of Steve Regan indicated that he was "not strategic" and "not detail oriented." _See_ Gersovitz Aff. at ¶ 23.

26.     At no time did O'Keefe inform Theme Co-op that the testing results of John Sandwick indicated that he was "not strategic" and "light on details." _See_ Gersovitz Aff. at ¶ 24.

27.     At no time did O'Keefe inform Theme Co-op that the testing results of Robert Cooke indicated that he was "not strategic." _See_ Gersovitz Aff. at ¶ 25.

28.     Instead, O'Keefe raved about the employees:  Cooke and Sandwick received O'Keefe's "strongest recommendation;" Regan was described as "a real pro" who "will have an immediate impact on the TCP business."  _See_ Theme Co-op's Exs. A, C, E.

29.     In another instance, Theme Co-op engaged O'Keefe to search for candidates for the position of Director of Marketing and Proposal Development. Although the ability to make major decisions was essential to this managerial position, O'Keefe presented Todd Nonken to Theme Co-op. _See_ Sampson Dep. at pp. 258-59, 264; _See also_ Theme Co-op's Ex. G.

30.     Nonken's test results indicated that he had an "average energy level" and "major decisions will come hard."  _See_ Theme Co-op's Ex. H.  O'Keefe did not reveal these negative traits in Nonken's personal appraisal report and never disclosed this information to anyone at Theme Co-op.  _See also_ Theme Co-op's Ex. G; _See_ Sampson Dep. at p. 263, p. 265; _See also_ Gersovitz Aff. at ¶ 26.

31.     In direct contradiction to the testing results, O'Keefe proclaimed to Theme Co-op that Nonken had "high energy", and recommended that Theme Co-op hire him for a management level position.  _See_ Theme Co-op's Ex. G.

32.     Similarly, for the position of Field Communications Manager, Sampson admitted that a key trait for this position is high energy level.  _See_ Sampson Dep. p. 202.  O'Keefe presented Rick Banez for this position despite the fact that his testing results showed his "energy level is below average."  _See_ Theme Co-op's Ex. J;  _See also_ Sampson Dep. at p. 202.

33.    Sampson admitted that O' Keefe failed to disclose the true testing result to Theme Co-op when O' Keefe recommended Banez to be hired. *See* Sampson Dep. at p. 204; *See also* Gersovitz Aff. at ¶ 27.

34.    O'Keefe failed to provide any documents in discovery, or other evidence, proving that it checked references for Robert Cooke, Steve Regan, John Sandwick, Lori Rice, Rick Banez, or Todd Nonken.  *See* Gersovitz Aff. at ¶ 28.

35.    O'Keefe has admitted that it never verified any of the candidates' employment histories. *See* Sampson Dep. at p. 53.

36.    O'Keefe failed to provide any documents in discovery, or any other evidence, proving that O'Keefe tested Crystal Hudson, Carey Rogers or Siena Long.  *See* Gersovitz Aff. at ¶ 29.

37.    In his deposition, Sampson down-played the importance of conducting reference checks, but he nevertheless admitted that in most instances O' Keefe did not conduct these checks.  *See* Sampson Dep. at pp. 94-95; 167-68.  He did, however, claim that he performed "informal" reference checks, where he would call his contacts at companies where the candidates had worked.  *See* Sampson Dep. at p. 94.

38.    Sampson testified that "he could not recall who he spoke to" for any of the purported informal reference checks that he claimed to have done for Regan, Sandwick, Nonken and Banez.  *See* Sampson Dep. at pp. 136, 152, 202-03, 276, 277.  Sampson said that he did not make any handwritten

notes of these purported reference checks, because he had a concern that informal reference checking was "illegal".  _See_ Sampson Dep. at p. 169.  In sum, there is virtually no evidence that these reference checks were ever done.

   39.  Additionally, Theme Co-op understood that in presenting the "most qualified" candidates, O'Keefe would conduct verifications of the candidates' employment histories.  _See_ Gersovitz Aff. at ¶ 11.  Sampson admitted that he never conducted these verifications for any of the candidates O'Keefe presented to Theme Co-op.  _See_ Sampson Dep. at p. 53.

   40.  While Sampson does concede that O'Keefe was obligated to conduct personality testing (_See_ Sampson Dep. at p. 58), O'Keefe failed to produce any documents showing that it had ever tested candidates Cary Rogers, Crystal Hudson, or Siena Long.  _See_ Gersovitz Aff. at ¶ 29.

   41.  Although O'Keefe produced certain documents indicating that Lori Rice was tested, O'Keefe has never produced the internal "Confidential" memorandum which contains the results of her test.  _See_ Gersovitz Aff. at ¶ 30.

   42.  One of the positions that O'Keefe was hired to fill was for the high-level management position of Vice President of Business Development.  _See_ Gersovitz Aff. at ¶ 31.  Although O'Keefe was retained to fill this position on January 4, 1999, it presented virtually no candidates for the position for months.  _See_ Sampson Dep. at pp. 244-45.  Thus, Theme Co-op did not have a group of candidates from

which to choose, and was even more dependent on O'Keefe's recommendation. *See* Gersovitz Aff. at ¶ 31.

43.    Siena Long was eventually hired for the position of Vice President of Business Development after an almost year long search.  *See* Gersovitz Dep. at p. 74.  However, O'Keefe did not initially present Long to Theme Co-op.  Rather, Long was presented to O'Keefe by Theme Co-op, and Theme Co-op then presumed that O'Keefe would interview her and then perform, testing, reference checks, and verification of her background information.  Theme Co-op further understood that O'Keefe would present Long back to Theme Co-op only if she was found to be qualified.  <u>See</u> Gersovitz Aff. at ¶ 32.

44.    O'Keefe did not  interview Long for the position of Vice President of Business Development.  *See* Sampson Dep. at pp. 245-48.  Rather, O'Keefe initially interviewed Long for the lower level position of Director of Business Development and Marketing.  *See* Sampson Dep. at p. 245.

45.    When Long did not express interest in the Director position, O'Keefe,  without interviewing, testing or verifying Long's employment history to assess her qualifications for the Vice President's role , recommended Long for the higher level position of Vice President of Business Development.  *See* Sampson Dep. at pp. 245-48; *See also* Gersovitz Dep. at pp. 38, 149.

46.    O'Keefe never presented certain candidates for which it collected commissions:  Siena Long, Steve Regan and Lori Rice.  Long, Regan and Rice were all candidates who *Theme Co-op*

presented to O' Keefe, and then presumed that O' Keefe would interview and then perform, testing, reference checks, and verification of background information. Theme Co-op further understood that O' Keefe would present these candidates back to Theme Co-op only if the candidates were found to be qualified. *See* Gersovitz Aff. at ¶ 32.

47.     Kevin Mulrain was never hired as a result of O'Keefe's efforts. Although O'Keefe initially presented Mulrain in 1998 to Theme Co-op, Theme Co-op did not hire Mulrain at that time. Mulrain was not interested in a position with Theme Co-op at that time. *See* Gersovitz Aff. at ¶ 33.

48.     However in 2000, as the result of the recruiting efforts of another executive recruiting firm, Johnson and Company, Theme Co-op eventually hired Mulrain. On or about January 30, 2000, Theme Co-op paid a $20,000 fee to Johnson and Company as a result of its recruiting efforts. *See* Gersovitz Aff. at ¶ 34.

49.     Sampson admitted that if Johnson and Company introduced Mulrain to Theme Co-op, O'Keefe is not entitled to a fee. *See* O'Keefe's Ex. 24 at p. 130.

50.     O' Keefe tested Regan, but hid the negative test results from Theme Co-op, and O' Keefe never checked the references or verified background information for either Regan or Rice. *See* Gersovitz Aff. at ¶ 34.

51.     Shortly after Theme Co-op hired the candidates, it became apparent that many of the employees were in fact unqualified. *See* Gersovitz Aff. at ¶ 35.

52.     Theme Co-op hired Robert Cooke, John Sandwick, and Steve Regan to fulfill the sales oriented positions of National Account Managers.  _See_ Gersovitz Aff. at ¶ 36.  During the six months and one week that Cooke was employed at Theme Co-op, Cooke generated zero sales and did not have any imminent sales on the horizon.  _See_ Gersovitz Dep. at p. 156.  Furthermore, Cooke generally lacked the patience or perseverance for a long selling cycle and failed to engender trust among co-workers, clients or prospective clients.  _See_ Gersovitz Aff. at ¶ 37.

53.     In the eight months and three weeks that Theme Co-op employed Regan, he also failed to generate adequate sales.  It was evident that Regan also lacked the patience or perseverance for a long selling cycle and he did not display energy, enthusiasm or persuasive abilities. _See_ Gersovitz Aff. at ¶ 38.

54.     Although Sandwick's tenure at Theme Co-op was longer, it also became apparent to Theme Co-op that Sandwick would not be able to meet sales expectations, and Theme Co-op invited Sandwick to resign from his position.  _See_ Gersovitz Aff. at ¶ 39.

55.     Approximately four months to the day that he was hired, Theme Co-op terminated Todd Nonken, Director of Marketing and Proposal Development, due to his 'boredom," his lack of commitment to Theme Co-op, his lack of qualification for the position for which he had been hired, his lack of effort, and his poor hours.  _See_ O'Keefe's Ex. 19;  _See also_ Gersovitz Aff. at ¶ 40.

56.    Carey Rogers was unable to meet Theme Co-op's sales expectations.  _See_ Gersovitz Dep. at pp. 49-50.  Consequently, Theme Co-op indicated to Rogers that if he did not resign from his position as Director of National Accounts, there was a likelihood that Theme Co-op would fire him.  _Id_.

57.    Likewise, issues regarding the performance of Field Communications Manager, Crystal Hudson, factored into her termination. _See_ Gersovitz Dep. at p. 112.

58.    As a result of her poor job performance, Theme Co-op demoted Siena Long from her position as Vice President of Business Development to Director of Business Development and Marketing and eventually gave her the option to resign from her position.  _See_ Gersovitz Dep. at p. 145.

59.    Siena Long was unable to build effective working relationships.  She was not a team player, did not take direction well, was not willing to learn from others, failed to work effectively with subordinates, and never took the time to understand the Theme Co-op selling process or the field communications function.  Long failed to follow company policies and administrative procedures and did not adequately adhere to priorities.  Moreover, she was error prone and performed negligently.  _See_ Gersovitz Aff. at ¶ 41.

60.    Theme Co-op terminated Mulrain's employment o n or about April 30, 2001 due to cutbacks and his performance issues.  _See_ O'Keefe's Ex. 24 at 115.

61.     Theme Co-op had never seen Exhibits B, D, F, H and J, the "Confidential" memoranda, before they were produced in the course of discovery on or about December 2002.  *See* Gersovitz Aff. at ¶ 44.

62.     Theme Co-op did not have any understanding of the meaning of Exhibits B, D, F, H and J until Paul Sampson revealed during his March 11, 2003 deposition that these were internal O'Keefe documents containing the test results for certain candidates.  This was the first time O'Keefe's fraudulent scheme was revealed.  *See* Gersovitz Aff. at ¶ 45.

63.     While O'Keefe concealed from Theme Co-op Exhibits B, D, F, H and J (the "Confidential" memoranda), it instead provided to Theme Co-op Exhibits A, C, E, G, and I (the personal appraisal reports) before Theme Co-op hired these candidates.  None of the negative test results contained in the "Confidential" memoranda were disclosed in the personal appraisal reports.  *See* Gersovitz Aff. at ¶ 46.

          **THE DEFENDANT,**
          THEME CO-OP PROMOTIONS, INC.

        By_____
          David A. Ball, Esq.
          Fed. Bar No. ct10154
          Cohen and Wolf, P.C.
          1115 Broad Street
          Bridgeport, CT  06604
          Tel. No. (203) 368-0211
          E-mail: dball@cohenandwolf.com

**<u>CERTIFICATION</u>**

I hereby certify that on this 8th day of March, 2005, a copy of the foregoing was mailed via First

Class Mail, postage prepaid, to the following:

> Francis D. Burke, Esq.
> Mangines & Burke LLC
> 1115 Main Street
> Suite 708
> Bridgeport, CT  06604

_____
David A. Ball, Esq.