UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

O'KEEFE & ASSOCIATES, INC.

      Plaintiff,

v.

THEME CO-OP PROMOTIONS, INC.

      Defendant.

Civil Action No.
3:00-CV-678 (SRU)

MARCH 4, 2005

## AFFIDAVIT OF GERRY GERSOVITZ

I, Gerry Gersovitz, being duly sworn, hereby depose and say:

1. I am over the age of eighteen (18) years and believe in the obligations of an oath.

2. I am the President and Chief Executive Officer of Theme Promotions, Inc., a California corporation which does business as Theme Co-Op Promotions ("Theme Co-op").

3. Theme Co-op is an advertising and marketing firm incorporated in the State of California.

4. Theme Co-op and O'Keefe entered into various agreements between July 29, 1998 and January 4, 1999 (collectively, the "Agreements").

5. The Agreements included both oral and written representations.

6. Theme Co-op retained O'Keefe to conduct a nationwide search to locate individuals for employment with Theme Co-op in accordance with the Agreements.

7. The Agreements obligated O'Keefe to:

    (1) Develop a Position Specification which describes the basic duties and responsibilities of the position;
    (2) Search the field to locate executives with qualifications closely matching the specifications;
    (3) Interview the most qualified candidates to obtain a comprehensive understanding of their accomplishments and potential; and
    (4) Present the most qualified candidates to the client for evaluation.

*See* O'Keefe's Exs. 1-5.

8. Provided that O'Keefe complied with each of these obligations, the Agreements obligated Theme Co-op to pay commissions to O'Keefe. *See* O'Keefe's Exs. 1-5.

9. In an effort to court Theme Co-op's business, O'Keefe emphasized its unique ability to present the most qualified candidates because of its personality testing.

10. This sales pitch was an essential factor in Theme Co-op's decision to enter into the contractual relationship with O'Keefe.

11. At the time the parties entered into the Agreements, O'Keefe and Theme Co-op reached an understanding that to carry out its responsibilities under the Agreements, O'Keefe would be obligated to: (1) conduct personality testing on candidates, in order to gauge the candidates' character traits and ability to perform certain tasks; (2) report the testing results to Theme Co-op through "personal appraisal reports" or profiles of the candidates, (3) conduct reference checks, and (4) verify the candidates' employment histories.

12. Between November 9, 1998 and January 24, 2000, relying on O'Keefe's recommendations, Theme Co-op hired a number of the candidates and paid $220,000 in commissions to O'Keefe.

13. Theme Co-op hired Robert Cooke, Steve Regan, John Sandwick, Carey Rogers, Lori Rice, Rick Banez, Crystal Hudson, Todd Nonken, and Siena Long in reliance on O'Keefe's representations that they were the "most qualified candidates" for the positions for which they were hired.

14. O'Keefe failed to perform the services required under the Agreements because it did not present the "most qualified candidates" to Theme Co-op.

15. In violation of the Agreements, O'Keefe: (1) failed to test certain candidates; (2) fraudulently concealed from Theme Co-op, and blatantly mischaracterized the negative testing results of those candidates it did test; (3) failed to conduct reference checks; and (4) neglected to verify the candidates' employment histories.

16. During the discovery process in this case, Theme Co-op uncovered O'Keefe's fraudulent scheme.

17. In many instances where O'Keefe conducted the personality testing that "sold" Theme Co-op on its services, O'Keefe hid any negative results from Theme Co-op or fabricated the results, misleading Theme Co-op into believing the candidates were the "most qualified" for the positions for which they were presented.

18. At his deposition, Paul Sampson disclosed for the first time that the testing results appeared on internal O'Keefe documents entitled "Confidential."

19. O'Keefe failed to disclose any of the Confidential memoranda, and instead provided to Theme Co-op personal appraisal reports, in which all negative test results were omitted.

20. In making its hiring recommendations, O'Keefe assured Theme Co-op as to the outstanding personality traits of the candidates, and in the personal appraisal reports presented to Theme Co-op only the rosiest portraits of each candidate's abilities.

21. If O'Keefe had disclosed to Theme Co-op the actual testing results -- which often contained negative information showing the candidates to be unqualified for the positions for which they were being considered -- Theme Co-op never would have hired these candidates.

22. In virtually every instance that O'Keefe presented a candidate's testing results to Theme Co-op, O'Keefe intentionally disclosed only the positive testing results and hid the negative testing results.

23. At no time did O'Keefe inform Theme Co-op that the testing results of Steve Regan indicated that he was "not strategic" and "not detail oriented."

24. At no time did O'Keefe inform Theme Co-op that the testing results of John Sandwick indicated that he was "not strategic" and "light on details."

25. At no time did O'Keefe inform Theme Co-op that the testing results of Robert Cooke indicated that he was "not strategic."

26. At no time did O'Keefe inform Theme Co-op that the testing results of Todd Nonken indicated that "major decisions will come hard" and that he had an "average energy level."

27. At no time did O'Keefe inform Theme Co-op that the testing results of Rick Banez indicated that his "energy level [was] slightly below average."

28. O'Keefe failed to provide any documents in discovery, or other evidence, proving that it checked references for Robert Cooke, Steve Regan, John Sandwick, Lori Rice, Rick Banez, or Todd Nonken.

29. O'Keefe failed to provide any documents in discovery, or other evidence, proving that O'Keefe tested Crystal Hudson, Carey Rogers or Siena Long.

30. Although O'Keefe produced certain documents indicating that Lori Rice was tested, O'Keefe has never produced the internal "Confidential" memorandum which contains the results of her test.

31. Theme Co-op hired O'Keefe to fill the high-level management position of Vice President of Business Development. Although O'Keefe was retained to fill this position on January 4, 1999, it presented virtually no candidates for the position for months. Thus, Theme Co-op did not have a group of candidates from which to choose, and was even more dependent on O'Keefe's recommendations.

32. O'Keefe never presented certain candidates for which it collected commissions: Siena Long, Steve Regan and Lori Rice. Long, Regan and Rice were all candidates who *Theme Co-op* presented to O'Keefe, and then presumed that O'Keefe would interview and then perform, testing, reference checks, and verification of background information. Theme Co-op further understood that O'Keefe would present these candidates back to Theme Co-op only if the candidates were found to be qualified.

33. Kevin Mulrain was never hired as a result of O'Keefe's efforts. Although O'Keefe initially presented Mulrain in 1998 to Theme Co-op, Theme Co-op did not hire Mulrain at that time. Mulrain was not interested in a position with Theme Co-op at that time.

34. However in 2000, as the result of the recruiting efforts of another executive recruiting firm, Johnson and Company, Theme Co-op eventually hired Mulrain. On or about January 30, 2000, Theme Co-op paid a $20,000 fee to Johnson and Company as a result of its recruiting efforts.

35. Shortly after Theme Co-op hired the candidates, it became apparent that many of the employees were in fact unqualified.

36. Theme Co-op hired Robert Cooke, John Sandwick, and Steve Regan to fulfill the sales oriented positions of National Account Managers.

37. During the six months and one week that Cooke was employed at Theme Co-op, Cooke generated zero sales and did not have any imminent sales on the horizon. Furthermore, Cooke generally lacked the patience or perseverance for a long selling cycle and failed to engender trust among co-workers, clients or prospective clients.

38. In the eight months and three weeks that Theme Co-op employed Regan, he also failed to generate adequate sales. It was evident that Regan also lacked the patience or perseverance for a long selling cycle and he did not display energy, enthusiasm or persuasive abilities.

39. Although Sandwick's tenure at Theme Co-op was longer, it also became apparent to Theme Co-op that Sandwick would not be able to meet sales expectations, and Theme Co-op invited Sandwick to resign from his position.

40. Approximately four months to the day that he was hired, Theme Co-op terminated Todd Nonken, Director of Marketing and Proposal Development, due to his "boredom," his lack of commitment to Theme Co-op, his lack of qualification for the position for which he had been hired, his lack of effort, and his poor hours.

41. Siena Long was unable to build effective working relationships. She was not a team player, did not take direction well, was not willing to learn from others, failed to work effectively with subordinates, and never took the time to understand the Theme Co-op selling process or the field communications function. Long failed to follow company policies and administrative procedures and did not adequately adhere to priorities. Moreover, she was error prone and performed negligently.

42. The following is a list of dates of employment for certain past and present Theme Co-op employees:

| Candidate | Hire Date | Date Left Theme Co-op |
|---|---|---|
| Steve Regan | 11/09/98 | 9/1/99 |
| John Sandwick | 11/09/98 | 1/15/03 |
| Robert Cooke | 11/24/98 | 6/15/99 |
| Crystal Hudson | 01/18/99 | 4/30/01 |
| Rick Banez | 05/24/99 | 2/14/03 |
| Todd Nonken | 07/30/99 | 12/9/99 |
| Lori Rice | 08/29/99 | to present |
| Cary Rogers | 08/30/99 | 6/21/02 |

| | | |
|---|---|---|
| Siena Long | 01/24/00 | 4/25/01 |
| Kevin Mulrain | 01/30/00 | 4/30/01 |

43.     Attached hereto as Exhibits A-J are true and correct copies of documents produced in discovery by O'Keefe to Theme Co-op.

44.     Theme Co-op had never seen Exhibits B, D, F, H and J, the "Confidential" memoranda, before they were produced in the course of discovery on or about December 2002.

45.     Theme Co-op did not have any understanding of the meaning of Exhibits B, D, F, H and J until Paul Sampson revealed during his March 11, 2003 deposition that these were internal O'Keefe documents containing the test results for certain candidates. This was the first time O'Keefe's fraudulent scheme was revealed.

46.     While O'Keefe concealed from Theme Co-op Exhibits B, D, F, H and J (the "Confidential" memoranda), it instead provided to Theme Co-op Exhibits A, C, E, G, and I (the personal appraisal reports) before Theme Co-op hired these candidates. None of the negative test results contained in the "Confidential" memoranda were disclosed in the personal appraisal reports.

47.     Attached hereto as Exhibit K is a true and correct copy of the entire March 11, 2003 deposition transcript of Paul Sampson.

48.     Attached hereto as Exhibit L is a true and correct copy of the entire March 6, 2003 deposition transcript of Gerry Gersovitz .

_____
Gerry Gersovitz

Subscribed and sworn to before me this \_\_\_\_\_ day of March, 2005.

_____
Notary Public
My commission expires:

## **CERTIFICATION**

I hereby certify that on this 8th day of March, 2005, a copy of the foregoing was mailed via First Class Mail, postage prepaid, to the following:

>Francis D. Burke, Esq.
>Mangines & Burke LLC
>1115 Main Street
>Suite 708
>Bridgeport, CT  06604

_____
David A. Ball, Esq.