UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| O'KEEFE & ASSOCIATES, INC. | : | |
| Plaintiff | : | |
| VS. | : | CIVIL ACTION NO. 3:00CV00678 (SRU) |
| THEME CO-OP PROMOTIONS, INC. | : | |
| Defendant | : | JUNE 21, 2005 |

**MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PLAINTIFF'S EXHIBITS**

Plaintiff, O'Keefe & Associates, Inc. ("O'Keefe") respectfully submits this Memorandum of Law in Opposition to Defendant's Motion to Strike Plaintiff's Exhibits dated March 8, 2005. For the reasons set forth below, Exhibits 6, 7, 8, 9, 17, 20 and 21 submitted in support of O'Keefe's Motion to Dismiss and/or for Summary Judgment are entirely relevant and admissible.

**I.    ARGUMENT**

O'Keefe's Exhibits 6, 7, 8, 9, 17, 20 and 21 are fully admissible and Defendant's Motion to Strike should, therefore, be denied in its entirety. Contrary to Defendant's claims, the exhibits in question are not inadmissible offers of compromise, irrelevant, or inadmissible hearsay. Because they are fully admissible, Defendant's Motion to Strike should be denied in its entirety. In the alternative, only those portions of the challenged exhibits which the Court finds inadmissible should be disregarded.

1.    <u>Exhibits 6 through 9</u>

Defendant's argument that Exhibits 6, 7, 8 and 9 must be stricken as inadmissible offers of compromise is unavailing. Exhibit 6 is not a precursor to settlement but simply an update provided by O'Keefe to Theme Co-Op in the ordinary course of business, as O'Keefe had done periodically throughout the period it provided services to Theme Co-Op. Moreover, at the time the letter was written, November 29, 1999, O'Keefe was unaware that Theme Co-Op was not planning to compensate O'Keefe for its services in full, or would subsequently be expressing its purported displeasure with the services provided by O'Keefe. As such, it is neither an "offer of compromise" nor a "precursor" of such an offer, and is perfectly admissible.

Exhibits 7, 8 and 9 are not merely offers of "compromise" but contain substantial factual information about the services provided by O'Keefe to Theme Co-Op and the subsequent dispute between the parties. The documents reflect the state of mind of the parties at the time, and contemporaneously document their thoughts and feelings as to their business relationship. Moreover, Theme Co-Op has filed a counterclaim against O'Keefe alleging, among other things, that O'Keefe intentionally defrauded Theme Co-Op. As set forth in Plaintiff's Motion for Summary Judgment, the reasons Theme Co-Op currently asserts as a defense to paying O'Keefe's invoices when they were issued are notably missing from its correspondence to O'Keefe. Plaintiff urges that the probative value of these documents far outweighs any potential prejudice, particularly at the

current stage of the litigation when the only issue is liability, not damages. At trial, a proper limiting instruction to the jury will avoid any potential prejudice to Defendant.

Exhibits 6, 7 and 8 are not "offers of compromise" at all, but rather correspondence between the parties in the ordinary course of business, prior to the contemplation of any legal claims. As such, they are admissible. Correspondence between parties prior to the filing of an action has been held to be "business communications" rather than "offers to compromise" and thus outside scope of Rule 408. See, e.g., Big O Tire Dealers v. Goodyear Tire & Rubber Co., 561 F.2d 1365, 1372-73, 195 U.S.P.Q. (BNA) 417 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052, 98 S. Ct. 905, 54 L. Ed. 2d 805 (1978). Indeed, while Defendant cites to Pierce v. F.R. Tripler & Co., 955 F.2d 820, 826-829 (2d Cir. 1992) in support of its motion, the Pierce Court expressly limited its ruling to the specific facts presented in that case, and drew a clear distinction between communications made by attorneys on behalf of their clients versus communications between the clients themselves, particularly where no action is pending:

> It is often difficult to determine whether an offer is made "in compromising or attempting to compromise a claim." *See* Brazil, *Protecting the Confidentiality of Settlement Negotiations*, 39 Hastings L.J. 955, 960-66 (1988). Both the timing of the offer and the existence of a disputed claim are relevant to the determination. *Cassino v. Reichhold Chemicals*, 817 F.2d 1338, 1342-43 (9th Cir. 1987) (offer of severance pay conditioned on waiver of age discrimination claim made contemporaneous with discharge not protected by Rule 408), *cert. denied*, 484 U.S. 1047, 98 L. Ed. 2d 870, 108 S. Ct. 785 (1988); *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1372-73, 195 U.S.P.Q. (BNA) 417 (10th Cir. 1977)

> (correspondence between parties prior to the filing of an action held "business communications" rather than "offers to compromise" and thus outside scope of Rule 408), *cert. dismissed*, 434 U.S. 1052, 98 S. Ct. 905, 54 L. Ed. 2d 805 (1978). However, where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408. The party seeking admission of an offer under those circumstances must demonstrate convincingly that the offer was not an attempt to compromise the claim.

Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827 (2d Cir. 1992).  Exhibits 6, 7 and 8 were all created at a time when neither party was represented by counsel, and no legal claims were pending, or even contemplated.  As such, there is no bar to their admissibility, and Defendant's motion to strike them should be denied.

Courts have repeatedly held that communications between parties regarding a debt owed, or even an offer to pay less than the full amount demanded, is not an inadmissible offer of compromise excludable under Rule 408.  See, e.g., Winchester Packaging v Mobil Chem. Co., 14 F.3d 316, 38 Fed Rules Evid. Serv. 1016 (7th Cir. 1994) (bill that itemizes what sender thinks recipient owes him and demands payment, even under threat of legal action, is not offer in compromise excludable under Rule 408); Cook Assocs. v PCS Sales (USA), Inc. (2003, DC Utah) 271 F.Supp.2d 1343, 56 Fed.R.Serv.3d 56 (2003) (seller was granted summary judgment where evidence including purchaser's offer to pay 60 cents on the dollar was not excluded as part of Fed. R. Evid. 408 because settlement discussions had not crystallized to point of threatened litigation); Athey v Farmers Ins. Exch., 234 F.3d 357, 55 Fed Rules Evid.

Serv. 1463 (8th Cir. 2000) (insured's settlement offer was admissible as evidence of bad faith).

    Defendant cites to what it calls the "pertinent part" of Rule 408, but the remainder of the Rule is also "pertinent" to the Court's consideration of Defendant's Motion to Strike. The entire test of Rule 408 is as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. **This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.**

Fed.R.Evid. 408 (emphasis added). While Plaintiff disputes that the Exhibits in question are truly "offers in compromise", even if the Court disagrees, this does not make them inadmissible nor the information that they contain. Exhibits 6, 7, 8 and 9 contain evidence that bears on the parties' state of mind, motivation and bias or prejudice, all of which is admissible for purposes other than proving "liability for an invalidity of the claim or its amount." The exhibits are also probative evidence relative to Defendant's delay in filing its counterclaims, and Plaintiff's arguments that those claims should be dismissed as untimely.

    2.    <u>Exhibits 17 and 20</u>

Exhibit 17 and 20 are clearly admissible business records kept in the ordinary course of business by Theme Co-Op, and therefore admissible pursuant to Fed. R. Evid. 803 (6). In the alternative, the documents may be admitted pursuant to the residual exception set forth in Fed. R. Evid. 807. Moreover, the statements of Cooke and Salveson are not necessarily offered for the truth of the matter asserted. The parties need not agree that Theme Co-Op's compensation plan was too risky or that there must have been "something seriously wrong" with Theme Co-Op. However, it does illustrate the atmosphere and state of mind among employees at Theme Co-op during the relevant time frame. The documents also provide evidence that not all of the problems Defendant claims to have experienced were caused by O'Keefe. The documents in question provide relevant, probative evidence that the reasons Mr. Cooke chose to leave Theme Co-op were in no way related to any deficiency in O'Keefe's selection process. Moreover, the Exhibits support Plaintiff's position that Theme Co-Op was aware of issues which affected not only Mr. Cooke, but other individuals placed by O'Keefe, and failed to address these issues in time to prevent Cooke and others from leaving. Thus, it was Theme Co-Op's own conduct, and not O'Keefe's, which caused any problems the individuals in question may have experienced.

    3.    <u>Exhibit 21</u>.

Exhibit 21 is a sworn affidavit from Stanley C. Johnson, President of Johnson & Company. While affidavits are, of course, generally inadmissible at trial, they are

nonetheless properly relied on in the context of summary judgment. Defendant itself relies almost exclusively on the Affidavit of Gerry Gersovitz to oppose Plaintiff's Motion to Dismiss and/or for Summary Judgment, which in addition to being entirely self-serving, is obviously hearsay. Any affidavit is by nature "hearsay" but nonetheless acceptable in support of or in opposition to a summary judgment motion. Plaintiff intends to present live testimony from Mr. Johnson as well as other Theme Co-op employees at trial, whereupon Defendant will have ample opportunity to cross examine.

     Defendant's argument that Johnson & Company cannot aver "that his association with Theme Co-Op is in any way related to O'Keefe's association with Theme Co-Op" is clearly unavailing. Theme Co-op faxed Johnson & Company the resume of Cary Rogers, one of the candidates placed by O'Keefe at Theme Co-Op as an "ideal profile example". The resume in question had O'Keefe's stamp on it. It can hardly be argued that statements of Chip Cohen, the Theme Co-Op executive who entered into several of the contracts between Theme Co-Op and O'Keefe, is anything other than a party admission and, therefore, admissible. The fact that Theme Co-Op seeks damages from O'Keefe for "fraud" for placing an "ideal" candidate like Rogers is certainly probative and seriously undermines Defendant's claims. In addition, the fact that both Johnson & Company and O'Keefe separately presented Kevin Mulrain as a candidate for the same position undermines Defendant's claim that O'Keefe was engaged in a "scheme" to defraud Defendant, as Theme Co-op has not alleged the existence of a conspiracy involving O'Keefe and Johnson & Company.

Moreover, as stated above, the evidence may be offered for something other than the truth of the matter asserted.  See, e.g. <u>Seafarers Int'l Union of N. Am. v Thomas</u>, 42 F. Supp. 2d 547, 52 Fed Rules Evid. Serv. 292 (3rd Cir. 1999) (admission of testimony and exhibits describing settlement negotiations that took place between union and employer in attempt to resolve employee's grievance was proper under Rule 408 because it was offered to show the conduct of the union in pursuing negotiations); <u>Council for Nat'l Register of Health Service Providers in Psychology v American Home Assurance Co.</u>, 632 F.Supp 144, 19 Fed Rules Evid. Serv. 763 (D.C. Dist. 1985) (evidence concerning negotiation of settlement of disputed claim for breach of insurance contract would be admissible at trial, since it would not be offered to prove liability for claim or its amount, but rather to support or negate claims of bad faith on the part of the insurance carrier).  In this case, whatever the true state of affairs, the documents contain evidence as to the state of mind of Theme Co-op employees not hired through O'Keefe, and shows that Theme Co-op was on notice that several of its employees not placed by O'Keefe had the same feelings and perceptions of its work environment and business practices.  Again, Defendant has alleged that O'Keefe committed deliberate fraud.  The fact that another recruiter in the same time span experienced similar issues with Theme Co-op severely undermines this claim, unless Theme Co-Op is asserting that Johnson & Company also engaged in a "scheme" to defraud it.

## II. CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant's Motion to Strike Plaintiff's Exhibits should be denied in its entirety.

                              THE PLAINTIFF

                              BY_____
                              Francis D. Burke
                              MANGINES & BURKE, LLC
                              1115 Main Street, Suite 708
                              Bridgeport, CT  06604
                              (203) 336-0887
                              Fed. Bar No. ct18688

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, via U.S. Mail, postage prepaid, this _____ day of June 2005, to:

David A. Ball, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, CT  06604

                              _____
                              Francis D. Burke