## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

O'KEEFE & ASSOCIATES, INC.                    :

     Plaintiff                                    :

VS.                                          :        CIVIL ACTION NO.
                                                      3:00CV00678 (SRU)

THEME CO-OP PROMOTIONS, INC.                 :

     Defendant                                    :        JUNE 21, 2005

### REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'
### MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Plaintiff, O'Keefe & Associates, Inc., respectfully submits this Memorandum of

Law in Support of Its Motion to Dismiss and/or for Summary Judgment, and in reply to

Defendant's Opposition Memorandum dated March 8, 2005.

## I.    PRELIMINARY STATEMENT

Defendant has presented no evidence whatsoever to support its claims that

O'Keefe & Associates, Inc. ("O'Keefe") "engaged in a scheme to induce Theme Co-Op

to pay commissions for employees that O'Keefe recruited".  Defendant's Memorandum

of Law in Opposition to Plaintiff's Motion to Dismiss and/or for Summary Judgment

("Def. Memo") at 1.  O'Keefe is a highly experienced and respected executive recruiting

firm that followed its usual procedures in recruiting and presenting candidates for

Theme Co-Op.  O'Keefe clearly met its obligations as set forth in the written contracts

between the parties.  O'Keefe did indeed present the "most qualified candidates" to

Theme Co-Op; it would have absolutely no reason not to.  Theme Co-Op had the

opportunity to interview the candidates, review their resumes and qualifications, and make a decision whom to hire. Defendant's claims of fraud and fraudulent concealment are neither properly pleaded nor supported by evidence. In fact, Defendant's counterclaims are nothing but a transparent attempt to muddy the waters and divert attention from its own breach of contract, fraudulent and tortious misconduct.

Defendant relies almost exclusively on the Affidavit of Gerry Gersovitz dated March 4, 2005. Mr. Gersovitz's Affidavit, however, is chock full of conclusory statements devoid of detail, let alone the specific detail needed to be pleaded and proved to support Defendant's claims of fraud. Noticeably absent are Affidavits or any other admissible evidence from Chip Cohan, Chuck Sjoberg or other individuals involved in entering into and carrying out the parties' agreements from Defendant's side. Only one of the contracts entered into by the parties was signed by Mr. Gersovitz, on January 4, 1999. (Ex. 4.) Defendant offers no competent, admissible evidence as to what Mr. Sjoberg or Mr. Cohen discussed, understood or agreed to prior to entering into contracts on behalf of Theme Co-Op. Moreover, given Mr. Gersovitz's lack of recall of various events, as evidenced by his deposition testimony, the credibility and reliability of his Affidavit is highly questionable. (Ex. 24, Ex. L.)

II.    **ARGUMENT**

1.    Defendant Has Failed To Properly Plead, Or Support, The Causes Of
       Action Set Forth In Its Amended Counterclaim.

In Paragraph 5 of his Affidavit, Gersovitz claims that "The Agreements included

both oral and written representations." However, nowhere in Defendant's counterclaim,

or in its opposition to the instant motion, does Defendant state what these oral

representations were, where and when they were made, or by whom. Nor does

Defendant explain why these oral representations, if important, were not incorporated

into the written agreements, which were discussed and revised by the parties prior to

being executed in their final form. (Ex. 1-5.) In Paragraphs 9 and 10 of his Affidavit,

Gersovitz states that "In an effort to court Theme Co-Op's business, O'Keefe

emphasized its unique ability to present the most qualified candidates because of its

personality testing. This sales pitch was an essential factor in Theme Co-Op's decision

to enter into the contractual relationship with O'Keefe." Again, no detail is provided as

to who allegedly made these representations, where, when and to whom, let alone the

precise wording of these statements. These specifics must, as a matter of law, be

pleaded and proven by clear and convincing evidence to support a claim of fraud.

Similarly, in Paragraph 11, Gersovitz states that an "understanding" was reached "at the

time the parties entered into the Agreements." As stated above, however, the

"Agreements" between the parties were entered into by various parties at various times.

(Ex. 1-5.) No specifics are provided as to who exactly reached the purported

3

"understanding", let alone where, when or what that understanding was based on. Plaintiff submits that this is nothing but an after-the-fact argument created by counsel out of whole cloth.

As stated in the Agreements between the parties, O'Keefe was obligated to interview and present the "most qualified" of the available candidates to Theme Co-Op. Technically speaking, there was no obligation on O'Keefe's part to present fully qualified candidates. Even if no qualified candidates were available, O'Keefe would still have been entitled to its full fee. No evidence has been presented, as none exists, that O'Keefe for some reason held back more qualified candidates in favor of those with lesser qualifications. Absent that, there can be no dispute that O'Keefe did, in fact, present the "most qualified" candidates available. After that, it was up to Theme Co-Op as to whom, if anyone, to hire. The record clearly shows, however, that all of the candidates presented by O'Keefe were eminently qualified, with long and successful track records prior to being hired by Theme Co-Op and, for most of them, successful tenures at Theme Co-Op, despite Defendant's own internal difficulties.

Gersovitz's sworn statement as to the importance of the personality testing which O'Keefe was purportedly "obligated" to perform is undermined not only by the fact that the language was not considered important enough to be written into the Agreements executed by the parties, but by Gersovitz's deposition testimony. For example, Gersovitz could not remember the name of the "test" O'Keefe was obligated to perform. Nor could Gersovitz recall whether or not Johnson and Company, another recruiter

4

utilized by Theme Co-Op at or about the same time, performed personality testing.

(Gersovitz depo. at 38-39, 115-116).  It is difficult to understand how Gersovitz could

claim that the personality testing which O'Keefe purportedly promised to perform was

vital to its decision to retain O'Keefe, yet not so important to his decision to retain

Johnson and Company at a later date that he could even remember whether they

performed any personality testing.  Of course, the personality testing was obviously not

important enough to Theme-Co-Op that they asked for it to be written into the

Agreements executed by the parties.  (Ex. 1-5.)  Nor was personality testing important

enough to Theme-Co-Op that it even inquired into the results of the testing, or asked to

see the tests or their results at any time prior to the filing of the instant litigation, or even

in the months following the instigation of the lawsuit.  The whole personality testing

"issue" is an obvious red herring, concocted by Defendant well after the fact.

Similarly, there is absolutely no evidence, other than the unsupported, conclusory

statements in Gersovitz's Affidavit that O'Keefe agreed to "(3) conduct reference

checks, and (4) verify the candidate's employment histories."  (Gersovitz's Affidavit

¶11.)  John O'Keefe and Paul Sampson both testified under oath at their depositions

that formal reference checks and verification of employment histories is normally done

by the client (in this case, Theme Co-Op) **after** they have decided to extend a formal

offer.  In this case, O'Keefe did some formal reference checks when specifically

requested by Chuck Sjoberg.  (O'Keefe Depo. at 52-53, Sampson Depo. at 29, 45-47,

52-53, 85, 95, 86-87, 195-96, 205, 250.)  Defendant offers absolutely no authority for its

claim that such tasks are "routinely performed by search companies."  In addition to the fact that Defendant offers no expert testimony to support such a claim, Stanley C. Johnson confirms that reference checks are done only at the client's specific request. (Ex. 21, ¶10.)

There is absolutely no evidence that O'Keefe "engaged in a scheme to induce Theme Co-Op to pay commissions for employees O'Keefe recruited."  (Def. Memo at 1.) For example, while Defendant now claims that there was an agreement that O'Keefe would conduct reference checks and background verifications on candidates, it doesn't say where, when and by whom such an agreement was reached.  Nor has Defendant produced a shred of documentation to support its claims, despite the voluminous discovery which took place in this case.  Moreover, Defendant concedes that this "fact pattern" "was first uncovered during discovery in this case."  (Def. Memo at 2.) Defendant claims that O'Keefe "failed to provide any documents in discovery or to proffer **any evidence**, proving that it checked references for Cooke, Regan, Sandwick, Rice, Banerz or Nonken" (Def. Memo at 8), seemingly overlooking the fact that it has the burden of proof and production on its counterclaims, not O'Keefe.  Defendant must prove that O'Keefe not only failed to check references and background information, but had a duty to do so.  Defendant has not come close to meeting its burden.

Defendant's position seems to be that the Court should assume that any document that O'Keefe was unable to locate three years after the fact in response to Defendant's discovery requests never existed, and to draw the most negative

inferences possible.  This not only turns the burden of pleading, production and proof on its head with regard to Defendant's counterclaims, but is a perfect example of why statutes of limitations exist.  Defendant's attempts to prove its case solely by showing that O'Keefe could not recall the specifics of each search or locate complete documentation is obviously prejudicial, and further supports dismissal of Defendant's untimely counterclaims.  It is precisely because of the prejudice inherent in forcing a party to litigate stale claims that statutes of limitations were implemented in the first place.  It would be inherently unfair to force O'Keefe to defend Theme Co-Op's belatedly "discovered" (or created) claims.  Had Theme Co-Op's claims been asserted immediately, or even in a timely fashion, O'Keefe could have gathered and preserved the documents and other evidence necessary to refute Defendant's counterclaims.  Instead, Defendant now seeks to build its case on the faulty assumption that any document that could not be located and produced in response to Defendant's discovery requests, three years after the fact, never existed.

Defendant's arguments also strain common sense.  If Theme Co-Op was expecting O'Keefe to conduct reference checks or verify background information on candidates, it certainly would have requested this information **prior** to hiring the candidates in question.  If they truly expected to receive this information, and didn't get it, they would certainly have followed up with O'Keefe.  The fact that they didn't do so is compelling evidence that this "fact pattern" is a creation meant to muddy the waters and deflect attention from Defendant's own culpability.  Paul Sampson's deposition

testimony makes clear that O'Keefe would only check formal references on occasion and only when specifically asked by a client (Sampson depo. at 52).  O'Keefe did final references for certain of the candidates it placed with Theme Co-Op, when specifically requested, and provided written memoranda reflecting the results to the point person for the search at Theme Co-Op.  (O'Keefe Depo. at 52-53, Sampson Depo. at 29, 45-47, 52-53, 85, 95, 86-87, 195-96, 205, 250.)  Sampson also made it clear that O'Keefe **never** does employment verification and never discussed doing so for Theme Co-Op, let alone agreed to do so. (Id.)

Defendant's claims that O'Keefe "buried" testing results or otherwise "hid" negative information are also totally unsupported.  O'Keefe went through its normal process in procuring candidates for Theme Co-Op.  The Predictive Index is just one small part of that process.  Based on all of the available inputs, and O'Keefe's experience and judgment, O'Keefe presented the "most qualified" candidates it uncovered for each position at Theme Co-Op.  There is no evidence, beyond mere speculation, to support any other conclusion.  As Defendant's claims hinge on this faulty premise, its counterclaims should be dismissed in their entirety.  This is especially so with regard to its claims of fraud or "fraudulent concealment", which carry a higher burden of pleading and proof.

Defendant's Memorandum is full of spurious claims which, even if true, are of no moment.  For example, Theme Co-Op grieves that O'Keefe failed to present what it now claims was a sufficient number of candidates to Theme Co-Op for it to choose among.

8

Nothing in the written Agreements between the parties obligated O'Keefe to present a minimum number of candidates (Ex. 1-5) and, in any case, O'Keefe did admittedly present multiple candidates for each position.  Similarly, Theme Co-Op now claims that "O'Keefe never presented certain of the candidates for which it collected commissions: Long, Regan and Rice" (Def. Memo at 10, Gersovitz Aff. at ¶46).  However, nowhere in its correspondence dated December 13, 1999, does Theme Co-Op raise the issue of its having referred Long or Regan to O'Keefe rather than vice versa (Ex. 7).  Indeed, on the chart attached to that correspondence, Defendant concedes that O'Keefe was owed an additional $30,000.00 for the placement of Sienna Long (Id.).  Moreover, as stated in Plaintiff's initial Memorandum, O'Keefe's full fee would be due and owing when the search was completed even if Theme Co-Op hired a candidate without any involvement on O'Keefe's part.  As such, Defendant's claims are entirely irrelevant.

      2.   <u>Plaintiff's Motion Is Timely Filed</u>.

      Defendant objects that "O'Keefe has no right to suddenly bring a 12(b)(6) motion at this stage." (Def. Memo at 13).  Plaintiff, however, promptly objected to Defendant's belated attempt to amend its counterclaims, which the Court nonetheless granted.  Thus, Defendant was on notice very early on that Plaintiff intended to challenge the timeliness as well as the underlying merits of its counterclaim.  Defendant had ample opportunity, therefore, to conduct any necessary discovery.  There was certainly no intent on Plaintiff's part "to wait until *after* the completion of discovery to complain about the sufficiency of certain pleadings."  Defendant offers no authority to support its claim

9

that the "dispositive motions" referenced in the Court's scheduling orders are limited to

motions for summary judgment.  Given the unique set of circumstances presented in

this case, and the equities involved, Plaintiff urges the Court to consider Plaintiff's

12(b)(6) motion and decide the issues on the merits.  In the alternative, Plaintiff urges

the Court, as Defendant suggests, to convert the rule 12(b)(6) motion to a Motion under

Rule 56 (Def. Memo. at 13-14).

     3.   <u>O'Keefe Presented The "Most Qualified" Candidates To Theme Co-Op</u>.

     Defendant states that there is "no dispute" that in order to present the most

qualified candidates to Theme Co-Op, O'Keefe was required to interview the

candidates, conduct personality testing, and check references."  (Def. Memo at 14.)

With the exception of interviewing the candidates, however, these issues are indeed

hotly disputed.  The requirement to conduct personality testing and check references

was not included in any of the written contracts entered into by the parties (Ex. 1-5).

Defendant has offered no evidence other than Gersovitz's own self-serving Affidavit that

the parties ever entered into such an agreement.  Both Paul Sampson and John

O'Keefe dispute that there was ever an agreement that all candidates would be tested,

or that O'Keefe would check references.  Plaintiff urges that the Agreements

themselves state what O'Keefe was required to do.  Just as a realtor might discuss

using the multiple listing service, its knowledge of the area, personal contacts, etc., if a

house that is acceptable to the client is presented to and purchased by his client, by

whatever means, the full commission is due and owing.  In this case, O'Keefe clearly

met its burden to present qualified candidates for each position.  The candidates'

qualifications are evidenced not only by their track records of success prior to joining

Theme Co-Op and, for the most part, at Theme Co-Op; but by the fact that Theme Co-

Op expressly found them to be qualified after interviewing the candidates, reviewing

their qualifications and exercising its own judgment.

       4.   <u>The Agreements Entered Into By The Parties Are Integrated And
Unambiguous</u>.

      Plaintiff vehemently disputes Defendant's contention that the language requiring

O'Keefe to present the "most qualified candidates" is ambiguous.  (Def. Memo at 18.)

As a result, no parole evidence is needed, and should not be admitted.  The contracts

entered into by the parties set forth their respective responsibilities and there is no

ambiguity.  Defendant claims that the Agreements in question (Ex. 1-5) are not

"integrated" "because the Agreements do not purport to represent the final and

complete agreement of the parties."  (Def. Memo at 18) (citations, internal quotations

omitted.)  The Agreements are integrated, however, as the whole purpose of creating

them was to represent the final agreement of the parties.  As such, parole evidence is

not only unnecessary, but cannot be admitted as a matter of law.

      Defendant's reliance on <u>Stetzer v. Dunkin Donuts, Inc.</u>, 87 F.Supp.2d 104, 112

(D.Conn. 2000) is misplaced.  <u>Stetzer</u> involved a series of written agreements between

the parties.  The Court concluded, therefore, that the particular contract in question did

not set forth the entire understanding with regard to a particular issue.  In this case,

there is only one written Agreement for any particular search, and the Agreement was executed by the parties only after the terms were discussed and the language revised to the parties' satisfaction. As such, there is no merit to Defendant's claims that the contracts were not integrated nor that lack of an "integration clause" renders them so. While Defendant claims that the "details were the subject of contemporaneous understandings between the parties", it offers only Gersovitz's self serving affidavit in support of this claim, and has offered absolutely no details regarding these purported "understandings" in either its pleadings or supporting documentation.

In making its decision, the <u>Stetzer</u> court cited to an earlier decision which held:

The rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. <u>Glendale Woolen Co. v. The Protection Ins. Co.</u>, 21 Conn. 19, 37 (1851). (Internal quotation marks omitted.) <u>Heyman Associates No. 1 v. Ins. Co. of Pennsylvania</u>, 231 Conn. 756, 779-80, 653 A.2d 122 (1995).

Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity … [<u>Barnard v. Barnard</u>, supra, 214 Conn. 109-10]. Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . <u>Levine v. Massey</u>, 232 Conn. 272, 279, 654 A.2d 737 (1995).

HLO Land Ownership Assocs. Ltd. Pshp. V. City of Hartford, 248 Conn. 350, 357-58 (1999).

Defendant argues that "courts have tempered the heightened pleading requirements of Rule 9(b) when the underlying purposes of Rule 9(b) have been met or when pleading each instance of the allegedly fraudulent conduct would be impractical. (Def. Memo at 27-28.)  Assuming, arguendo, that Defendant is correct, Defendant has not met either test.  Contrary to Defendant's assertions, Plaintiff remains completely at a loss to understand the basis of Defendant's counterclaims.  Defendant has not stated which of O'Keefe's employees allegedly asserted that O'Keefe would "test all prospective employees and would provide to Theme Co-Op a profile of the candidates including the results of the testing", or that O'Keefe would perform reference or background checks on candidates.  Defendant has also not alleged where, when or to whom these statements were made.  Nor is Plaintiff aware of this information through discovery, as Mr. Gersovitz did not provide this information during his deposition. Plaintiff urges that it would be unfair and prejudicial to force O'Keefe to defend against these vague allegations of fraud, the very situation the heightened pleading requirements of Rule 9(b) are designed to prevent.  Defendant's reliance on In re Cardiac Devices Qui Tam Litig., 221 F.R.P. 318, 334 (D.Conn. 2004) is similarly misplaced, as that case involved thousands of medical claims and numerous plaintiffs and defendants.  Nor has Defendant offered any explanation as to why it feels that

pleading additional facts regarding its claims of fraud would be "impractical." As such,

Defendant's claims of fraud should be dismissed.

     5.    <u>Defendant Has Not Met Its Burden Of Pleading Or Proving Its Claims Of Fraudulent Concealment</u>

     Despite Defendant's protestations to the contrary, the Connecticut Appellate

Court has stated that, at the summary judgment stage, it was not sufficient for a plaintiff

to prove merely that it was more likely than not that the defendant had concealed a

cause of action, but rather had to prove fraudulent concealment by the more exacting

standard of clear, precise, and unequivocal evidence. <u>Bartone v. Robert L. Day Co.</u>,

232 Conn. 527 (1995). In granting summary judgment, the court found that the plaintiff

had failed to provide clear and convincing evidence of the defendant's fraudulent intent

to conceal the existence of a cause of action in order to delay the plaintiff's filing of a

suit while such a cause was still open to them:

> The applicability of § 52-595 in the circumstances of this case is,
> therefore, the dispositive issue in these appeals. The question before us is
> whether the plaintiffs have adduced any credible evidence that any of the
> defendants fraudulently concealed the existence of the plaintiffs' cause of
> action. To meet this burden, it was not sufficient for the plaintiffs to prove
> merely that it was more likely than not that the defendants had concealed
> the cause of action. Instead, the plaintiffs had to prove fraudulent
> concealment by the more exacting standard of clear, precise, and
> unequivocal evidence. <u>Beckenstein v. Potter & Carrier, Inc.</u>, 191 Conn.
> 150, 163, 464 A.2d 18 (1983); <u>Puro v. Henry</u>, [188 Conn. 301, 308, 449
> A.2d 176 (1982)]; <u>Alaimo v. Royer</u>, 188 Conn. 36, 39, 448 A.2d 207
> (1982)." (Internal quotation marks omitted.) <u>Bound Brook Assn. v.
> Norwalk</u>, 198 Conn. 660, 666, 504 A.2d 1047, cert. denied, 479 U.S. 819,
> 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986). Under our case law, to prove
> fraudulent concealment, the plaintiffs were required to show: (1) a
> defendant's actual awareness, rather than imputed knowledge, of the facts

> necessary to establish the plaintiffs' cause of action; (2) that defendant's intentional concealment of these facts from the plaintiffs; and (3) that defendant's concealment of the facts for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause of action. <u>Connell v. Colwell</u>, 214 Conn. 242, 250-51, 571 A.2d 116 (1990); <u>Bound Brook Assn. v. Norwalk</u>, supra, 665-66; <u>Lippitt v. Ashley</u>, 89 Conn. 451, 480, 94 A. 995 (1915). Our examination of the evidence persuades us that the plaintiffs have failed to make such a showing.

<u>Bartone v. Robert L. Day Co.</u>, 232 Conn. 527, 532-533 (1995). Unfortunately for Defendant, it cannot show that O'Keefe was aware of the necessary facts to establish Defendant's cause of action, intentionally concealed those facts, or did so for the express purpose of delaying Defendant's filing of its counterclaims.

Plaintiff vigorously disputes Defendant's claim that "O'Keefe admits that it was actually aware that it intentionally misrepresented the qualifications of the candidates presented." (Def. Memo at 32.) Paul Sampson's deposition testimony, as cited by Defendant, says nothing of the sort. In fact, both Paul Sampson and John O'Keefe made it clear that they presented what they believed, and continue to believe, was accurate information to Theme Co-Op for each candidate. Both Paul Sampson and John O'Keefe made it very clear that if they were not convinced that a candidate was qualified for a position, that candidate was not presented to Theme Co-Op. Theme Co-Op has produced not a scintilla of evidence to the contrary.

Defendant's attempt to compare the current situation to <u>Fenn v. Yale Univ.</u>, 283 F.Supp.2d 615, 638 (D.Conn. 2003) is entirely misplaced. In fact, <u>Fenn</u> illustrates what Theme Co-Op's claims are lacking, evidence that O'Keefe **intentionally** mislead

Defendant.  In that case, unlike the instant one, Yale University made repeated and direct inquiries regarding the information not revealed.  By contrast, Defendant admittedly **never** asked O'Keefe to produce documents relating to testing, references or confirmation of background information until discovery commenced in this case.  At that point, O'Keefe responded to Defendant's requests in good faith.

To successfully assert a claim of fraudulent concealment, Defendant must prove that O'Keefe fraudulently concealed the information in question for the express purpose of "obtaining delay on the plaintiff's part in filing the present action."  Again, there is not a scintilla of evidence to support this claim.  Evidence of a misrepresentation does not itself establish that a defendant "misrepresented those facts with the intent necessary to constitute fraudulent concealment. The actions of the defendant must be 'directed to the very point of obtaining the delay of which he afterward seeks to take advantage by pleading the statute.'"  Connell v. Colwell, 214 Conn. 251 (1990). Thus, even if O'Keefe fraudulently concealed information in order to induce Theme Co-Op to hire certain candidates, that would not support a claim of fraudulent concealment.  At the time these candidates were placed with Theme Co-Op, there was not one inkling that the relationship would deteriorate and that litigation would result let alone claims of fraud or unfair trade practices.  As such, O'Keefe had no motive to conceal anything.

In order to avail itself of the benefits of a fraudulent concealment claim, Defendant must also show that it lacked knowledge of O'Keefe's alleged misconduct in a timely fashion.  However, Theme Co-Op concedes that "shortly after Theme Co-Op

hired the candidates, it became apparent that many of the employees were, in fact,

unqualified." (Gersovitz Affidavit, ¶ 35.) As the gravaman of Defendant's counterclaim

is that O'Keefe passed off unqualified candidates as qualified, Defendant admittedly had

notice of the necessary facts to file its claim within the applicable statute of limitations

period. Having failed to do so, its attempt to assert "fraudulent concealment" in order to

rescue untimely claims should be denied by the Court, even if the end result might

appear to be harsh:

> Although the unavoidable result of construing General Statutes § 52-577
> may be harsh because "the plaintiff[s] may very well be foreclosed from
> any remedy for what might have been an actionable injury . . . [it] is within
> the General Assembly's constitutional authority to decide when claims for
> injury are to be brought. The plaintiff[s] [have] not been deprived of an
> opportunity to bring an action. The opportunity was there, but was limited
> by time."

Van Deusen v. Dratch, 1996 Conn. Super. LEXIS 1149 at *9-*10.

6.    Fraudulent Concealment is not Applicable to a CUTPA Claim

In addition to the above arguments, which apply to all of the causes of action

contained in Defendant's counterclaims, the Connecticut Supreme Court has

specifically held that the statute of limitations in CUTPA may not be avoided by proof of

fraudulent concealment. Fichera v. Mine Hill Corp., 207 Conn. 204, 215-217 (1988).

Conn. Gen. Stat. §42a-110 provides that an action under CUTPA "may not be brought

more than three years after the occurrence of a violation. "In Fichera v. Mine Hill

Corporation, 207 Conn. 204, 217 (1988), our Supreme Court noted that the application

of fraudulent concealment, under General Statutes § 52-595, so as to toll the statute

until discovery, would defeat the legislative intention expressed in § 42-110g(f) that

actions for CUTPA violations are barred after the lapse of more than three years from

their occurrence terms." <u>Boyrer-Blucher v. Dime Sav. Bank</u>, 1992 Conn. Super. LEXIS

3530 at ***3-***4 (Conn. Super. Ct. Dec. 16 1992).  As Defendant first attempted to bring a

claim under CUTPA more than three years after the last candidate was hired, this claim

must be dismissed as a matter of law.

## III    CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant's Amended Counterclaims

should be dismissed in their entirety.

THE PLAINTIFF


BY_____
      Francis D. Burke
      MANGINES & BURKE, LLC
      1115 Main Street, Suite 708
      Bridgeport, CT  06604
      (203) 336-0887
      Fed. Bar No. ct18688

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, via U.S. Mail,

postage prepaid, this 21st day of June 2005, to:

David A. Ball, Esq.
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, CT  06604


_____
Francis D. Burke

19